# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 3:26-CV-00021 |
| STEPHANIE THOMAS, in her Official Capacity as Secretary of the State of Connecticut, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF SEIU DISTRICT 1199NE, CONNECTICUT ALLIANCE FOR RETIRED AMERICANS, CONNECTICUT CITIZEN ACTION GROUP, AND BETTE MARAFINO'S MOTION TO INTERVENE AS DEFENDANTS

# TABLE OF CONTENTS

Introduction ..................................................................................................... 1

Background ....................................................................................................... 4

I.    Federal law has long made voter list maintenance a state
      responsibility, consistent with the constitutional separation of
      powers. ..............................................................................................4

II.   The Department of Justice has embarked on an unprecedented
      nationwide campaign to collect personal voter registration data held
      by the states.......................................................................................5

III.  The Department of Justice sues Connecticut to obtain its complete
      registration list. ................................................................................8

IV.   Proposed Intervenors' sensitive personal information is placed in
      jeopardy by DOJ's demands. ..........................................................10

Legal Standard................................................................................................ 14

Argument........................................................................................................ 15

I.    Proposed Intervenors are entitled to intervene as of right............................15

      A.   The motion to intervene is timely and will not prejudice the
           parties.......................................................................................15

      B.   Proposed Intervenors have significantly protectable interests in
           this case....................................................................................16

      C.   Proposed Intervenors' interests are not adequately represented
           by existing parties....................................................................19

II.   Proposed Intervenors should alternatively be granted permissive
      intervention. ....................................................................................23

Conclusion ...................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*1789 Found. Inc. v. Fontes,*
    No. 2:24-cv-02987-PHX-SPL, 2025 WL 834919 (D. Ariz. Mar. 17,
    2025) ........................................................................................................... 25

*Alabama ex rel. Gallion v. Rogers,*
    187 F. Supp. 848 (M.D. Ala. 1960) ...................................................... 9

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
    570 U.S. 1 (2013) ................................................................................... 4

*Ass'n of Conn. Lobbyists LLC v. Garfield,*
    241 F.R.D. 100 (D. Conn. 2007) ....................................................... 25

*Bellitto v. Snipes,*
    935 F.3d 1192 (11th Cir. 2019) ................................................. 22, 24

*Bellitto v. Snipes,*
    No. 0:16-cv-61474-BB, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ............. 21

*Berger v. N.C. State Conf. of the NAACP,*
    597 U.S. 179 (2022) ........................................................................ 2, 21

*Brennan v. N.Y.C. Bd. of Educ.,*
    260 F.3d 123 (2d Cir. 2001) .............................................................. 22

*Bridgeport Guardians, Inc. v. Delmonte,*
    602 F.3d 469 (2d Cir. 2010) .............................................................. 16

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
    250 F.3d 171 (2d Cir. 2001) .............................................................. 19

*Citizens Against Casino Gambling in Erie Cnty. v. Hogen,*
    417 F. App'x 49 (2d Cir. 2011) ........................................................ 23

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) ............................................................. 20

*Conservation L. Found. of New Eng., Inc. v. Mosbacher,*
    966 F.2d 39 (1st Cir. 1992) ............................................................... 20

*Does 1 Through 7 v. The Taliban,*
No. 6:22-cv-990-DNH-TWD, 2023 WL 4532763 (N.D.N.Y. July 12, 2023) ................................................................................................ 22

*Foster v. Love,*
522 U.S. 67 (1997) ................................................................................ 4

*Fund for Animals, Inc. v. Norton,*
322 F.3d 728 (D.C. Cir. 2003) ........................................................... 20

*Grocery Mfrs. Ass'n v. Sorrell,*
No. 5:14-cv-00117-CR, 2014 WL 12644264 (2014) ........................... 15

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.,*
797 F.2d 85 (2d Cir. 1986) ................................................................. 24

*Hoblock v. Albany Cnty. Bd. of Elections,*
233 F.R.D. 95 (N.D.N.Y. 2005) ......................................................... 19

*Hulinsky v. County of Westchester,*
No. 22-cv-06950-PMH, 2023 WL 3162428 (S.D.N.Y. Apr. 28, 2023) ............. 16

*Husted v. A. Philip Randolph Inst.,*
584 U.S. 756 (2018) ............................................................................. 4

*Issa v. Newsom,*
No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ................................................................................................ 18

*Jud. Watch, Inc. v. Ill. State Bd. of Elections,*
No. 1:24-cv-1867-SLE, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ............... 18

*Kalbers v. U.S. Dep't of Just.,*
22 F.4th 816 (9th Cir. 2021) ....................................................... 16, 18

*Kennedy v. Lynd,*
306 F.2d 222 (5th Cir. 1962) ............................................................... 9

*Kleissler v. U.S. Forest Serv.,*
157 F.3d 964 (3d Cir. 1998) .............................................................. 20

*Lichtman v. Blom,*
No. 89-cv-05643-JFK, 1990 WL 186856 (S.D.N.Y. Nov. 19, 1990) ................. 25

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
    27 F.4th 792 (2d Cir. 2022) ............................................................ 14, 15, 16, 19

*New York v. Nat'l Sci. Found.*,
    No. 1:25-cv-4452-JPC, 2025 WL 1793858 (S.D.N.Y. June 30, 2025) .............. 23

*Paher v. Cegavske*,
    No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28,
    2020) ....................................................................................................... 18

*Provencher v. Bimbo Bakeries USA*,
    No. 2:22-cv-00198-WKS, 2023 WL 6050244 (D. Vt. Aug. 7, 2023) ................ 19

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ............................................................................ 10

*Pub. Int. Legal Found., Inc. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020) ......................................................... 25

*In re Sealed Case*,
    237 F.3d 664 (D.C. Cir. 2001) ................................................................. 16, 18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    550 B.R. 241 (Bankr. S.D.N.Y. 2016) ............................................................ 14

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ....................................................................................... 19

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ....................................................................................... 24

*United States v. Amore*,
    No. 25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026) ........................... 2, 11, 12, 24

*United States v. Benson*,
    No. 1:25-cv-01148-HYJ-PJG, 2025 WL 3520406 (W.D. Mich. Dec. 9,
    2025) .................................................................... 2, 12, 18, 19, 22, 24

*United States v. Galvin*,
    No. 1:25-cv-13816-LTS (D. Mass. Jan. 6, 2026)................................... 3, 12, 25

*United States v. Hooker Chems. & Plastics Corp.*,
    749 F.2d 968 (2d Cir. 1984) ....................................................... 14, 16

*United States v. Nago*,
    No. 1:25-cv-000522-LEK-RT (D. Haw. Jan. 5, 2026) ....................................... 3

*United States v. Oregon*,
    No. 6:25-cv-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025) ........ 2, 19, 22

*United States v. Scanlan*,
    No. 1:25-cv-00371-AJ (D.N.H. Jan. 5, 2026) ..................................... 3

*United States v. Simon*,
    No. 0:25-cv-03761-KMM-EMB (D. Minn. Jan. 6, 2026) ............................ 3, 12

*United States v. Weber*,
    No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Nov. 19, 2025) ............................. 3, 25

*Vermonters for a Clean Env't, Inc. v. Madrid*,
    No. 1:12-cv-00073-JGM, 2012 WL 3238237 (D. Vt. Aug. 7, 2012) ................. 23

*Vt. All. for Ethical Healthcare, Inc. v. Hoser*,
    No. 5:16-cv-00205-GWC, 2016 WL 7015717 (D. Vt. Dec. 1, 2016) ................. 15

## US CONSTITUTIONAL PROVISIONS

Article I § 4 ................................................................................................ 4

## FEDERAL STATUTES

52 U.S.C. § 20507 ........................................................................................ 4

52 U.S.C. § 20703 ........................................................................................ 8

52 U.S.C. § 21083 ..................................................................................... 4, 5

## STATE STATUTES

Conn. Gen. Stat. 9.9-50d ........................................................................... 1, 17

**OTHER AUTHORITIES**

AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 09:24
    ET), https://x.com/AAGDhillon/status/2001659823335616795 ........................ 5

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to
    Build National Voter Roll*, N.Y. Times (Sep. 9, 2025),
    https://perma.cc/8VP4-WRXD ............................................................... 5

Fed. R. Civ. P. 24 ................................................................... 2, 14, 15, 23

H.R. Rep. No. 86-956 (1959) ...................................................... 9

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of
    Justice Department Requests for Voter Information*, Brennan Ctr.
    for Just. (Jan. 7, 2026), https://perma.cc/Z4RT-RVL2 ..................................... 5

7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024) ............... 19

*Notice of Information Sharing Between Centers for Medicare and Medicaid
    Services and the Department of Homeland Security*, 90 Fed. Reg.
    53324 (Nov. 25, 2025), https://perma.cc/9ABZ-KB4D........................................ 6

## INTRODUCTION

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued Connecticut's Secretary of State earlier this week, seeking to compel her to turn over the State's complete and unredacted voter registration list, which contains sensitive and private information about every voter in Connecticut. This legal assault intrudes not only upon Connecticut's constitutional prerogative to maintain and protect its own voter registration list—it directly intrudes upon the privacy rights of individual Connecticut voters who have good reason to fear their personal information being handed over to the federal government.

SEIU District 1199NE ("1199NE"), Connecticut Alliance for Retired Americans ("Alliance"), Connecticut Citizen Action Group ("CCAG"), and Bette Marafino (together, "Proposed Intervenors") move to intervene in this suit to prevent the improper disclosure of their sensitive and personal information to DOJ. Connecticut law guarantees voters that their sensitive voter information contained within the statewide voter registration list—including driver's license numbers, partial Social Security numbers, and dates of birth—"shall be confidential," and specifically restricts the circumstances in which a State agency may share the list with a federal agency. Conn. Gen. Stat. § 9-50d(b). DOJ's requested relief runs roughshod over these privacy protections, which Proposed Intervenors seek to preserve.

Proposed Intervenors are entitled to intervention as of right because they have significant interests that are at severe risk of impairment by this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, they have an interest in ensuring that their and their members' personal information is not improperly disclosed to DOJ. While Connecticut's election officials have thus far resisted disclosure, they do not adequately represent Proposed Intervenors; as a governmental defendant, the Secretary of State must consider the "broader public-policy implications" of the issues presented in this suit, unlike Proposed Intervenors, who are solely concerned with protecting their members and constituents' privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)).

Unsurprisingly, in parallel cases involving DOJ's nationwide crusade, other federal courts have recently granted intervention to similarly situated intervenors. The U.S. District Court for the District of Rhode Island recently granted intervention to Proposed Intervenor SEIU District 1199NE and to the Alliance's sister chapter in Rhode Island. Minute Order, *United States v. Amore*, No. 25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026). And courts across the country have granted similar intervention motions in parallel cases, including motions by other state chapters of the Alliance. *See, e.g.*, *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (granting intervention as of right to Oregon social welfare organization and three registered Oregon voters); *United States v. Benson*, No. 1:25-cv-01148-HYJ-

PJG, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) (granting intervention as of right to Michigan Alliance for Retired Americans and Michigan voters); Minute Order, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting two separate motions to intervene by groups including the NAACP and the League of Women Voters of California); Minute Order, *United States v. Nago*, No. 1:25-cv-000522-LEK-RT (D. Haw. Jan. 5, 2026), ECF No. 20 (granting intervention to the NAACP); Order, *United States v. Scanlan*, No. 1:25-cv-00371-AJ (D. N.H. Jan. 5, 2026), ECF No. 23 (granting intervention to four New Hampshire voters); Order, *United States v. Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn. Jan. 6, 2026), ECF No. 90 (granting intervention to the Minnesota Alliance for Retired Americans, League of Women Voters, and Common Cause); Electronic Order, *United States v. Galvin*, No. 1:25-cv-13816-LTS (D. Mass. Jan. 6, 2026), ECF No. 30 (granting intervention to the Massachusetts Alliance for Retired Americans, NAACP, and others). This Court should do the same.

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b), the requirements of which are readily satisfied. Doing so will ensure that Connecticut voters have a voice in this litigation concerning the disclosure of *their* sensitive and personal information. At a minimum, Proposed Intervenors' presence will help to develop the issues in this case and ensure vigorous presentation of arguments that the existing Defendant may be limited in presenting. Those considerations weigh strongly in favor of permissive intervention. And

Proposed Intervenors will abide by any schedule ordered by the Court or agreed to by the existing parties—they will not delay the case.

## BACKGROUND

**I.  Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns to the states the responsibility of determining eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA"), which charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).

The Help America Vote Act ("HAVA") regulates how *states* maintain voter registration lists, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2)(A). HAVA is abundantly

4

clear that this list is to be "defined, maintained, and administered at the *State* level."
*Id.* § 21083(a)(1)(A) (emphasis added).

## II. The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, it has reportedly sent demands to at least forty states, with plans to make similar demands on all fifty.[1] The vast majority have refused to comply, declining to turn over sensitive personal information that is typically protected by state law. *See* Martizen-Ochoa, O'Connor, & Berry, *supra* note 1.

The DOJ has now filed lawsuits against 23 states and the District of Columbia to compel the production of that data. While the DOJ has repeatedly claimed that it need not offer any justification for its demands, it reportedly seeks to use the data to create a national voter database to attempt to substantiate unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Martizen-Ochoa, O'Connor, & Berry, *supra* note 1. In recent public statements, moreover, Assistant Attorney General Harmeet Dhillon made clear that DOJ also intends to use it to attempt to compel removal of *hundreds of thousands* of voters from the rolls.[2]

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 7, 2026), https://perma.cc/Z4RT-RVL2; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.
[2] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 09:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing

And, as a brief filed in one of the parallel lawsuits by several states that have received these demands from DOJ details, in some cases, DOJ has sought not simply read-only access, but "materials that define or explain how" the voter information is coded into the registration database, "potentially because additional information about database coding would assist in transferring data … into other federal databases." *Weber*, No. 2:25-cv-09149-DOC-ADS, ECF No. 37-2 at 150. This is no surprise. In recent months the federal government has repeatedly sought to transfer and utilize sensitive information given to or possessed by it for other uses that threaten the citizenry in a number of ways. *See Notice of Information Sharing Between Centers for Medicare and Medicaid Services and the Department of Homeland Security*, 90 Fed. Reg. 53324 (Nov. 25, 2025), https://perma.cc/9ABZ-KB4D. These concerns are similarly present here.

DOJ sent Connecticut a letter on August 6, 2025, demanding a copy of its statewide voter registration list within fourteen days. Compl. ¶¶ 20–21. Secretary Thomas responded by letter on August 20. *Id.* ¶ 23. In that response, Secretary Thomas provided answers to some of DOJ's questions and indicated that she would provide the remainder "as soon as practical." *Id.* In a follow-up letter dated December 12, DOJ explicitly asked Secretary Thomas to provide an electronic copy of Connecticut's statewide voter list, containing "all fields," including registrant's full name, date of birth, residential address, driver's license number, and the last four

---

these lawsuits: "You're going to see hundreds of thousands of people in some states being removed from the voter rolls.").

digits of their social security number. *Id.* ¶¶ 24–25. On December 24, Secretary
Thomas declined to provide DOJ with an unredacted copy of Connecticut's statewide
voter list, noting that doing so would violate Connecticut privacy law. *Id.* ¶ 27.

As noted above, the DOJ has made similar demands to scores of other states,
the vast majority of which have refused to turn over highly sensitive personal voter
information. Beginning in September 2025, DOJ began filing lawsuits against some
of those states. On September 16, DOJ brought actions against Oregon and Maine,
alleging in both cases that DOJ was entitled to the voter information it sought under
three statutes: the NVRA, HAVA, and the Civil Rights Act of 1960.[3] On September
24, DOJ filed another set of lawsuits, this time against California, Michigan,
Minnesota, New York, New Hampshire, and Pennsylvania.[4] Again, DOJ brought its
claims under these same three statutes, excepting only the NVRA claim in states that
are exempt from the NVRA. Shortly thereafter, DOJ filed suit against Delaware,
Maryland, New Mexico, Rhode Island, Vermont, Washington, Colorado, Hawaii, and
Nevada.[5] Then, on December 11, DOJ filed suit against Massachusetts, and a week

---

[3] *See* Compl., *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Sep. 16, 2025);
Compl., *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Sep. 16, 2025).

[4] *See* Compl., *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Sep. 25,
2025); Compl., *United States v. Benson*, No. 1:25-cv-01148-HYP-PJG (W.D. Mich. Sep.
25, 2025); Compl., *United States v. Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn.
Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 1:25-cv-00371-AJ (D.N.H. Sep.
25, 2025); Compl., *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-01338-MAD-
PJE (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Schmidt*, No. 2:25-cv-01481-
CB (W.D. Pa. Sep. 25, 2025).

[5] *See* Compl., *United States v. Albence*, No. 1:25-cv-01453-RGA (D. Del. Dec. 2, 2025);
Compl., *United States v. DeMarinis*, No. 1:25-cv-03934-SAG (D. Md. Dec. 1, 2025);
Compl., *United States v. Oliver*, No. 1:25-cv-01193-LF-JFR (D.N.M. Dec. 2, 2025);

later, against Georgia, Wisconsin, the District of Columbia, and Illinois.[6] Earlier this week, DOJ sued Arizona and filed this suit against Connecticut. Compl., *United States v. Fontes*, No. 2:26-cv-00066-SMB (D. Ariz. Jan. 6, 2026). Notably, in these more recent waves of these lawsuits, DOJ has abandoned its NVRA and HAVA claims and alleges *only* a claim under the Civil Rights Act of 1960.

### III.    The Department of Justice sues Connecticut to obtain its complete registration list.

DOJ filed this suit on January 6, 2026, seeking to compel Connecticut to provide its full statewide voter registration list. *See generally* Compl., ECF No. 1. It names Stephanie Thomas, in her official capacity as Secretary of State, as Defendant. *See id.* ¶ 7. DOJ brings only one claim: an allegation that the Secretary is in violation of the Civil Rights Act of 1960, 52 U.S.C. § 20703. This statute does not support the Department's sweeping demands.

DOJ invokes Section 303 of the Civil Rights Act of 1960 ("CRA"), a Civil Rights-era law that permits DOJ to review certain voting records to investigate "question[s]

---

Compl., *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Dec. 2, 2025); Compl., *United States v. Hanzas*, No. 2:25-cv-00093-MKL (D. Vt. Dec. 1, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-06078-SKV (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967-PAB-TPO (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522-LEK-RT (D. Haw. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728-ART-CLB (D. Nev. Dec. 11, 2025).

[6] *See* Compl., *United States v. Galvin*, No. 1:25-cv-13816-LTS (D. Mass. Dec. 11, 2025); Compl., *United States v. Raffensperger*, No. 5:25-cv-00548-CAR (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-01036-AMB (W.D. Wis. Dec. 18, 2025); Compl., *United States v. District of Columbia Bd. of Election*s, No. 1:25-cv-04403-RDM (D.D.C. Dec. 18, 2025); *United States v. Matthews*, No. 3:25-cv-03398-CRL-DJQ (C.D. Ill. Dec. 18, 2025).

concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 7 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961).

DOJ admits that protecting the constitutional right to vote is *not* its purpose here; rather it claims to be evaluating Connecticut's compliance with list maintenance efforts required by the NVRA and HAVA. Compl. ¶¶ 8–9. The NVRA has its own separate disclosure rules and both statutes have their own enforcement mechanisms, yet DOJ does not bring any claims against Connecticut under those statutes (unlike in several of its previous otherwise nearly-identical lawsuits against other states). Instead, DOJ chooses to hang its hat solely on Section 303. But Section 303 is not a roving authorization for the federal government to demand any voter information it wants from any state for any purpose the federal government can conceivably concoct, and Section 303 does not require the disclosure DOJ seeks here. Moreover, even if Section 303 did apply, it would not prohibit Connecticut from redacting confidential and sensitive voter information that has nothing to do with

9

investigating the denial of the right to vote, just as it would be entitled to do under the NVRA. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

## IV. Proposed Intervenors' sensitive personal information is placed in jeopardy by DOJ's demands.

Proposed Intervenors include three statewide organizations whose members include retired union members, as well as civically engaged, registered voters in Connecticut, and an individual voter, whose confidential personal information—driver's license numbers, partial social security numbers, and full dates of birth—will be disclosed to DOJ if it prevails in its suit.

*1199NE.* 1199NE, the New England Health Care Employees Union, represents healthcare workers in Connecticut and Rhode Island and has united workers to win a voice at work to demand improvements for people in nursing homes, hospitals, and state- and community-based healthcare services. Ex. A ("Baril Decl.") ¶ 3. 1199NE has more than 30,000 members, including approximately 25,000 in Connecticut, who elect leadership and decide priorities. *Id.* ¶ 4. 1199NE is very politically engaged; it advocates on behalf of its members and lobbies for and proposes legislation that protects healthcare workers. *Id.* ¶ 5.

To that end, it is important to 1199NE that its members are politically engaged and able to register to vote and vote, and it runs various programs to register and turn out its members to vote. *Id.* 1199NE's ability to help its members become and stay politically engaged and advance legislation important to its membership will be directly frustrated by DOJ's efforts to obtain a complete, unredacted state voter file. *Id.* ¶¶ 6–12. 1199NE's members—which include many workers outside of hospitals

10

who are foreign-born, low-income, and marginalized—fear that if their personal information is handed over to the federal government, additional scrutiny, investigation, and retaliation will follow, not only against themselves but also against their family and community members. *Id.* ¶¶ 8–10. In particular, members who are naturalized citizens are concerned that the federal government will use it to falsely accuse them of illegally registering and may opt out of registering out of fear that they will be targeted and wrongfully accused. *Id.* ¶ 9. DOJ's efforts to obtain Connecticut's complete voter registration list thus threaten to sow distrust among 1199NE's members, deter them from voter registration and voting due to fear, and make it harder for 1199NE to turn out these members and accomplish a core part of its work of engaging members to participate politically. *Id.* ¶¶ 6–12. Union members have also been targeted by right-wing organizations and in connection with immigration enforcement raids, and 1199NE is concerned that the personal information in Connecticut's voter registration list may be used to further target, persecute, and blacklist its members. *Id.* ¶ 13.

For these same reasons, 1199NE also sought, and earlier this week was granted, intervention in the parallel case that DOJ brought against Rhode Island. Minute Order, *Amore*, No. 25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026).

**The Alliance.** The Alliance is a grassroots organization dedicated to the interests of retirees and a chartered state affiliate of the National Alliance for Retired Americans. *See* Ex. B ("Marafino Decl.") ¶¶ 5–7. Its mission is to ensure social and economic justice and full civil rights for retirees after a lifetime of work. *Id.* ¶ 7. The

Alliance has approximately 56,909 members in Connecticut, including retirees from public and private sector unions, community organizations, and individual activists. *Id.* ¶ 6. Most of these members are over 60 years old. *Id.* Should DOJ prevail in this suit, it will affect the Alliance and its members in several ways. The Alliance is acutely aware that its members, who tend to be older citizens, are frequently targeted for different types of scams. *See id.* ¶ 10. Many of its members have serious concerns regarding the disclosure of their personal information to DOJ. They fear that the federal government will not adequately safeguard this information and that it will expose the Alliance's members in particular to potential harm. *See id.* ¶ 11. The Alliance's mission will become more difficult if Connecticut voters, including its members, fear that their personal information will be turned over to the federal government simply because they have registered to vote. *Id.* For these same reasons, the Alliance's sister chapters have repeatedly sought, and been granted, intervention in parallel, nearly-identical actions brought by the DOJ against other states. *See* Minute Order, *Amore*, No. 25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026) (granting intervention as of right to Rhode Island Alliance for Retired Americans); *Benson*, 2025 WL 3520406, at *6 (granting intervention as of right to Michigan Alliance for Retired Americans); Order, *Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn. Jan. 6, 2026) (granting intervention to the Minnesota Alliance for Retired Americans); Electronic Order, *Galvin*, No. 1:25-cv-13816-LTS (D. Mass. Jan. 6, 2026) (granting intervention to the Massachusetts Alliance for Retired Americans).

*CCAG.* CCAG is a statewide membership organization dedicated to actively engaging the residents of Connecticut to alter the relations of power in order to build a more just society and to mobilizing grassroots power. *See* Ex. C ("Swan Decl.") ¶ 4. With over 10,000 members across Connecticut, many of whom are of retirement age, CCAG achieves its mission by dedicating significant resources to community organizing, door-to-door canvasses, legislative advocacy and coalition building. *Id.* ¶ 6. The DOJ's efforts to obtain Connecticut's complete voter registration data with all sensitive fields threatens the interests of CCAG, whose members are often at the forefront of activism concerning climate change, the commodification of healthcare, and economic justice—all causes adverse to the current administration. *Id.* ¶ 7. Consequently, if DOJ obtains the sensitive data it seeks in this lawsuit, CCAG and its members will face deepening distrust of the electoral system. *Id.* ¶ 10. These threats all work to undermine CCAG's ultimate mission of supporting civic engagement for its members and community. *Id.*

**Bette Marafino**. Bette Marafino is a registered voter in Connecticut and a retired Professor of English at Tunxis Community College. Marafino Decl. ¶ 4. Since her retirement, Bette has been active with the Alliance for Retired Americans and currently serves as President of the Connecticut chapter. *Id.* ¶ 2. As an activist herself, Bette has spearheaded several national taskforces concerning access to social security and is often called upon to share her commitment to preserving the dignity of retirees with both legislators and the public. *Id.* ¶ 4. DOJ's efforts to obtain Connecticut's statewide voter registration list leave her concerned as to the purpose

of DOJ's request, particularly given recent data breaches involving federal agencies like the Department of Government Efficiency ("DOGE"). *Id.* ¶ 12.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require courts to grant intervention to any movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To have a right to intervene, "a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "The inquiry under Rule 24(a)(2) is a flexible one and the factors should 'be read not discretely, but together.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 550 B.R. 241, 248 (Bankr. S.D.N.Y. 2016) (citation omitted) (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984)). "A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention." *Id.* (quoting *Hooker Chems.*, 749 F.2d at 983); *see also Hooker Chems.*, 749 F.2d at 983 (discussing flexibility of inquiry and recognizing that most recent substantive changes to Rule 24 "focused on abandoning

formalistic restrictions in favor of 'practical considerations' to allow courts to reach pragmatic solutions to intervention problems" (citing Fed. R Civ. P. 24(a) advisory committee's note to 1966 amendment)).

Additionally, courts retain discretion to grant "[p]ermissive intervention . . . when a proposed intervenor 'has a claim or defense that shares with the main action a common question of law or fact.'" *In re N.Y.C. Policing*, 27 F.4th at 804 (quoting Fed. R. Civ. P. 24(b)(1)(B)). This is a "relaxed" standard. *Vt. All. for Ethical Healthcare, Inc. v. Hoser*, No. 5:16-cv-00205-GWC, 2016 WL 7015717, at *2 (D. Vt. Dec. 1, 2016).[7]

## ARGUMENT

### I.   Proposed Intervenors are entitled to intervene as of right.

#### A.   The motion to intervene is timely and will not prejudice the parties.

Proposed Intervenors' motion—filed just days after the complaint—is timely. *See, e.g.*, *Grocery Mfrs. Ass'n v. Sorrell*, No. 5:14-cv-00117-CR, 2014 WL 12644264, at *4 (D. Vt. Oct. 7, 2014) (motion to intervene "filed within two months of the filing of the [c]omplaint" was "timely filed"). No case schedule has been set, and no deadlines would need to be altered if intervention is granted. Further, Proposed Intervenors agree to abide by any schedule set by the Court or agreed to by the existing parties. Accordingly, there is no conceivable prejudice to the existing parties. *Hulinsky v.*

---

[7] In compliance with Rule 24(c)'s requirement that a motion to intervene be accompanied by a "pleading," Proposed Intervenors attach a proposed answer. *See* Ex. D (Proposed Answer). Proposed Intervenors reserve the right to file a motion to dismiss under Rule 12 ahead of any deadline set by the Court or the Federal Rules.

*County of Westchester*, No. 22-cv-06950-PMH, 2023 WL 3162428, at *3 (S.D.N.Y. Apr. 28, 2023) (concluding there was no prejudice where intervenors did not seek to interfere with any existing schedules in the case).

### B. Proposed Intervenors have significantly protectable interests in this case.

Proposed Intervenors have significant protectable interest in this case, both in protecting their and their members' sensitive and personal information, and—for the organizations—in protecting their ability to advance their missions. "For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (citation omitted). But, consistent with the liberal standards of Rule 24, the Second Circuit has "cautioned against requiring that a proposed intervenor identify a narrow interest amounting to a legal entitlement." *In re N.Y.C. Policing*, 27 F.4th at 801; *see also Hooker Chems.*, 749 F.2d at 983 (recognizing "components of the Rule are not bright lines, but ranges").

Proposed Intervenors satisfy the standard of Rule 24(a)(2). 1199NE, the Alliance, and CCAG, along with their members, all oppose the disclosure of their sensitive personal information to DOJ. *See supra* Background Part IV. Courts regularly find that precisely these types of concerns support intervention. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of

16

records). The voter registration data of Proposed Intervenors is protected from disclosure under Connecticut law. Conn. Gen. Stat. § 9-50d. And Proposed Intervenors are credibly concerned about the consequences of the disclosure of their sensitive information to DOJ, including because of the potential risk of data breaches that would expose them to identity-theft scams (of particular concern to the Alliance's and CCAG's membership, which are older and a frequent target of such scams), and because of the potential for retaliation by the federal government against individuals who engage in civic advocacy efforts disfavored by the current administration. *See* Marafino Decl. ¶¶ 9–10; Swan Decl. ¶¶ 10–11. Privacy is also of great importance to 1199NE's members, some of whom are also specifically concerned about the prospect of investigation, scrutiny, and retaliation affecting them and their families and communities if their protected personal information is handed over directly to the federal government. Baril Decl. ¶¶ 4, 7–12.

    In addition to directly threatening their members' privacy interests, this action also threatens the mission-critical voter engagement and turnout work of the organizational Proposed Intervenors. As noted, the Alliance's and CCAG's members are predominantly senior citizens, and senior citizens frequently are targets of identity-theft scams. Marafino Decl. ¶ 9; Swan Decl. ¶ 11. Turning all of this information over to DOJ to be used however it chooses raises the risk that bad actors could obtain it—a risk that may dampen their members' participation. The same is true of concerns among 1199NE's membership that their data could be misused, and that they may be targeted or wrongfully accused by the federal government, who they

17

feel cannot be trusted to handle sensitive personal information responsibly. Baril Decl. ¶¶ 7–12. And the electoral participation of the Proposed Intervenors' memberships is critical to their respective missions. *See* Marafino Decl. ¶ 7; Swan Decl. ¶¶ 6–7; Baril Decl. ¶¶ 5, 12. Those missions will be frustrated if their members are discouraged from participating in the political process because they know being registered to vote entails the disclosure of their personal information to a federal government they cannot trust to handle it securely. Marafino Decl. ¶¶ 10–11; Swan Decl. ¶¶ 9–11; Baril Decl. ¶ 11. Courts have long recognized that organizations have a significant protectable interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their constituents' ability to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-1867-SLE, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).

Moreover, Proposed Intervenors "have an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm." *Benson*, 2025 WL 3520406, at *6. Once that information is disclosed, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (citation omitted) (finding impairment when intervenor's confidential information was at risk of disclosure); *see also Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents).

18

Consequently, Proposed Intervenors easily satisfy Rule 24(a)(2)'s requirement of having a significantly protectable interest in the litigation. *See Benson*, 2025 WL 3520406, at *2; *Oregon*, 2025 WL 3496571, at *1–2.

### C. Proposed Intervenors' interests are not adequately represented by existing parties.

Proposed Intervenors cannot be assured adequate representation in this matter if they are denied intervention. The "burden to show inadequacy of representation . . . is a minimal one, and not onerous." *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95, 99 (N.D.N.Y. 2005); *accord Trbovich*, 404 U.S. at 538 n.10 (explaining this requirement "should be treated as minimal"). While the Second Circuit demands a greater "showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective," *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001), even then, a proposed intervenor need only show that they "might not be adequately represented" by existing parties. *In re N.Y.C. Policing*, 27 F.4th at 803. This is also the case where the proposed intervenor and the party's interests are "related" but "not 'identical.'" *Provencher v. Bimbo Bakeries USA*, No. 2:22-cv-00198-WKS, 2023 WL 6050244, at *4 (D. Vt. Aug. 7, 2023). Courts are thus "liberal in finding" this requirement satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024). Here, Proposed Intervenors have distinct interests from the existing parties, all of which are governmental actors

bound by federal and state laws governing their voter list maintenance activities. No existing party adequately represents those distinct interests.

To start, DOJ naturally does not represent Proposed Intervenors' interests, as it seeks to forcibly compel production of Connecticut's unredacted state voter registration list. And while Secretary Thomas has, to date, resisted that demand, she too does not adequately represent Proposed Intervenors' specific interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)); *see also Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (explaining that "a governmental entity charged by law with representing the public interest of its citizens" will not necessarily "advance the narrower interest of a private entity").

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if Connecticut continues to also oppose the relief that DOJ seeks at a high level of abstraction, it does not follow that it shares "identical" interests to civic membership organizations committed to voter engagement and turnout. *See id.*

Here, Secretary Thomas and Proposed Intervenors do not share "identical" interests. For one, the Secretary is obliged to enforce the requirements of the NVRA and HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, she has an obligation to weigh and carry out public duties that Proposed Intervenors do not share. *See, e.g.*, *Bellitto v. Snipes*, No. 0:16-cv-61474-BB, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant was "an elected official" whose interpretation of the NVRA might not be aligned with intervenors' interests). Indeed, the NVRA specifically requires state election officials to "balance competing objectives"— maintaining accurate and current voter rolls

21

while promoting access to the ballot box—that do not pertain to the Proposed Intervenors or their interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). In view of those circumstances, adequate representation of Proposed Intervenors' interests is hardly "assured." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132–33 (2d Cir. 2001) (explaining this factor is met where parties' interests are not "so similar" as to assure adequacy of representation). Proposed Intervenors are not burdened with Secretary Thomas's public duties and obligations to enforce the NVRA and HAVA—they are focused entirely on maintaining the privacy of their sensitive personal information. As a result, they are well-positioned to press legal arguments that cannot be "equally asserted" by the existing parties given their public duties. *Does 1 Through 7 v. The Taliban*, No. 6:22-cv-990-DNH-TWD, 2023 WL 4532763, at *5 (N.D.N.Y. July 12, 2023).

At bottom, the government entities and public officials on either side of the case do not stand in the same shoes as Proposed Intervenors and thus do not sufficiently represent their interests, which are directly impacted by the disposition of this matter. Other courts have recognized this and granted intervention as of right to organizations and individual voters similar to Proposed Intervenors in analogous cases brought by the Department of Justice against other states—including to other state chapters of the Alliance. *See Benson*, 2025 WL 3520406, at *5–6; *Oregon*, 2025 WL 3496571, at *2.

## II.    Proposed Intervenors should alternatively be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly and agree to abide by any schedule set by the Court or agreed to by the original parties, meaning there will be no delay or prejudice. And Proposed Intervenors' defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. D (Proposed Answer).

The Second Circuit has identified additional factors the Court can consider in weighing permissive intervention requests. *See Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (citing *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). Those considerations include the nature of the proposed intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether the proposed intervenors are likely to contribute to the full development of the factual and legal issues in the case. *See id.* Each of those factors buttress the case for intervention here.[8]

---

[8] While these additional factors overlap with certain considerations under Rule 24(a)(2), it does not follow that permissive intervention must be denied if Rule 24(a)(2) is not satisfied. To the contrary, "[d]istrict courts routinely grant permissive intervention to applicants even in cases where the court has found that the existing

First, Proposed Intervenors seek to defend important personal privacy interests, as well as interests unique to civic organizations. *See supra* Section I.B; *cf. U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 769 (1989) (recognizing the strong personal interest in maintaining privacy of personal information). Second, these interests are not identical to the interests of the existing governmental defendants and may not be fully advanced absent their intervention. *See supra* Section I.C. Finally, the harms vulnerable voters face and the arguments that they advance will certainly contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden*, 797 F.2d at 89 (citation omitted). Whereas the existing Defendants will have to present arguments in a manner consistent with their duties under the NVRA and HAVA, *see Bellitto*, 935 F.3d at 1201, Proposed Intervenors can present arguments guided solely by the interests of Connecticut voters and civic organizations that will be harmed by DOJ's requested relief. *See supra* Section I.C. Finally, Proposed Intervenors are also uniquely situated to offer insight into the parallel proceedings, many of which involve the Alliance's sister chapters, who have been granted intervention in those other cases. *See, e.g.*, Minute Order, *Amore*, No. 25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026); *Benson*, 2025 WL

_____

party adequately represents the proposed intervenor's interest." *New York v. Nat'l Sci. Found.*, No. 1:25-cv-4452-JPC, 2025 WL 1793858, at *5 (S.D.N.Y. June 30, 2025); *see also Vermonters for a Clean Env't, Inc. v. Madrid*, No. 1:12-cv-00073-JGM, 2012 WL 3238237, at *2 (D. Vt. Aug. 7, 2012) (choosing not to analyze whether the existing party adequately represents the proposed intervenor's interest and instead granting permissive intervention).

3520406, at*6; Electronic Order, *Galvin*, No. 1:25-cv-13816-LTS (D. Mass. Jan. 6, 2026). Proposed Intervenors therefore stand ready to "offer a unique, personal and highly relevant factual perspective to the law, its development, and its impact." *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007).

Courts routinely grant permissive intervention to civic organizations to ensure their voices and the voices of their members are heard when litigation implicates the rights and privacy of all voters, notwithstanding the presence of governmental defendants ostensibly charged with upholding broader conceptions of the public interest. *See, e.g., 1789 Found. Inc. v. Fontes*, No. 2:24-cv-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants).

Thus, in keeping with the "liberal standard[]" in favor of permissive intervention, *Lichtman v. Blom*, No. 89-cv-05643-JFK, 1990 WL 186856, at *1 (S.D.N.Y. Nov. 19, 1990), and because Proposed Intervenors' participation will assist rather than prejudice the efficient development and resolution of this matter, the Court should grant permissive intervention if it does not find that Proposed Intervenors may intervene as of right. *See* Minute Order, *Weber*, No. 25-cv-09149-DOC-ADS (C.D. Cal. Nov. 19, 2025) (granting permissive intervention by oral order to state affiliates of the NAACP and League of Women Voters in DOJ's parallel lawsuit in California).

## CONCLUSION

The Court should grant Proposed Intervenors' motion to intervene.

Dated: January 9, 2026

Respectfully submitted,

*/s/ William Bloss*
William Bloss
CT Fed. Bar. No. CT01008
**KOSKOFF KOSKOFF & BIEDER P.C.**
350 Fairfield Avenue, Suite 501
Bridgeport, CT 06604
T: (475) 766-4317
BBloss@koskoff.com

David R. Fox*
Marisa A. O'Gara*
Tori Shaw*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
dfox@elias.law
mogara@elias.law
tshaw@elias.law

* *Pro Hac Vice* Applications Forthcoming

*Counsel for Proposed Intervenors*