# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

                *Plaintiff*,

    v.

STEPHANIE THOMAS, in her Official Capacity
as Secretary of State for the State of Connecticut,

                *Defendant*.

Case No. 3:26-cv-00021 (KAD)

## MOTION OF COMMON CAUSE AND CLAIRE EWING
## TO INTERVENE AS DEFENDANTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. ii

INTRODUCTION...............................................................................................................1

BACKGROUND..................................................................................................................2

    I.   DOJ's Efforts to Obtain Private Voter Information .......................................2

    II.  Proposed Intervenors .................................................................................8

ARGUMENT .......................................................................................................................9

    I.   Movants Are Entitled to Intervene as a Matter of Right ...............................9

        A.  The Motion to Intervene Is Timely. ...................................................9

        B.  Proposed Intervenors Have Concrete Interests in the Litigation. ....................10

        C.  Disposition of this Case May Impair the Proposed Intervenors' Interests. .................................................................................12

        D.  Defendants' Interests Differ from Those of Proposed Intervenors .................13

    II.  In The Alternative, The Court Should Grant Permissive Intervention.........................15

CONCLUSION .................................................................................................................16

CERTIFICATE OF SERVICE...........................................................................................18

**Cases**

*A.H. by E.H. v. N.Y. State Department of Health*,
    147 F.4th 270 (2d Cir. 2025) ................................................................................ 9

*Allco Finance Limited. v. Etsy*,
    300 F.R.D. 83 (D. Conn. 2014) ..................................................................... 10, 16

*American Farm Bureau Federation v. Environmental Protection Agency*,
    278 F.R.D. 98 (M.D. Pa. 2011) ........................................................................... 15

*Berger v. North Carolina State Conference of the NAACP*,
    597 U.S. 179 (2022) ............................................................................................ 14

*Brennan v. N.Y.C. Board of Education*,
    260 F.3d 123 (2d Cir. 2001) ............................................................................... 15

*Donaldson v. United States*,
    400 U.S. 517 (1971) ............................................................................................ 10

*Hamilton Reserve Bank Limited. v. Democratic Socialist Republic of Sri Lanka*,
    134 F.4th 73 (2d Cir. 2025) ................................................................................ 10

*In re Enforcement of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*,
    153 F.4th 142 (2d Cir. 2025) .............................................................................. 13

*In re New York City Policing During Summer 2020 Demonstrations*,
    27 F.4th 792 (2d Cir. 2022) ............................................................... 9, 10, 12, 13

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
    No. 24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ...................... 13, 14

*Kobach v U.S. Election Assistance Commission*,
    No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) .......................... 12

*North River Insurance Co. v. O&G Industries, Inc.*,
    315 F.R.D. 1 (D. Conn. 2016) ............................................................................ 12

*Pennsylvania Fair Elections v. Pennsylvania Department of State*,
    337 A.3d 598 (Pa. Commw. Ct. 2025) ................................................................. 7

*Republican National Committee v. Aguilar*,
    2024 WL 3409860 (D. Nev. July 12, 2024) ....................................................... 16

*Texas v. United States*,
    798 F. 3d 1108 (D.C. Cir. 2015) ........................................................................ 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...................................................................................10

*Trbovich v. United Mine Workers of America*,
404 U.S. 528 (1972) ...................................................................................13

*United States Postal Service v. Brennan*,
579 F.2d 188 (2d Cir. 1978) .......................................................................16

*United States v. Amore*,
No. 1:25-cv-639-MSM-PAS (D.R.I. Jan. 6, 2026) ......................................2

*United States v. Galvin*,
No. 1:25-cv-13816-LTS (D. Mass. Jan. 6, 2026) .........................................2

*United States v. Hanzas*,
No. 2:25-cv-903-MKL (D. Vt. Jan. 20, 2026) ..............................................2

*United States v. Nago*,
No. 1:25-cv-522-LEK-RT (D. Haw. Jan. 5, 2026).......................................2

*United States v. Oliver*,
No. 1:25-cv-1193-LF-JFR (D.N.M. Dec. 19, 2025) .....................................2

*United States v. Scanlan*,
No. 1:25-cv-371-AJ (D.N.H. Jan. 5, 2026) ..................................................2

*United States v. Schmidt*,
No. 2:25-cv-1481-CB (W.D. Pa. Jan. 16, 2026) ..........................................2

*United States v. Simon*,
No. 0:25-cv-3761-KMM-EMB (D. Minn. Jan. 6, 2026) ..............................2

*United States v. Weber*,
No. 2:25-cv-9149-DOC-ADS (C.D. Cal. Nov. 19, 2025)...................... 2, 12

*United States v. Wisconsin Elections Commission*,
No. 3:25-cv-1036-JDP (W.D. Wis. Jan. 22, 2026) ......................................2

**Statutes**

5 U.S.C. § 552a ........................................................................................ 11, 14

52 U.S.C. § 20507.............................................................................................8

52 U.S.C. § 20507.............................................................................................5

52 U.S.C. § 20703...........................................................................................13

52 U.S.C. § 21085 ......................................................................................... 8

Conn. Gen. Stat. § 9-19h(b)(1) ................................................................... 11

Conn. Gen. Stat. § 9-20(b) .......................................................................... 11

Conn. Gen. Stat. § 9-23h ............................................................................. 11

Conn. Gen. Stat. § 9-26 ............................................................................... 11

Conn. Gen. Stat. § 9-32 ............................................................................... 11

Conn. Gen. Stat. § 9-50d ............................................................................. 11

**Other Authorities**

Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, ProPublica, July 13, 2024 ............... 6

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, Spotlight PA, Nov. 8, 2024 ......................................................................... 7

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025 ................................................................... 5

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Magazine, Nov. 16, 2025 .................................................................................. 6

Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024 ......................................................... 7

Jeremy Roebuck and Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, Phila. Inquirer, Nov. 1, 2024 ........................................................................................ 7

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025 ................................................................................... 5

Jonathan Shorman, *Trump's DOJ offers states 'confidential' deal to wipe voters flagged by feds as ineligible*, Stateline, Dec. 18, 2025 ................................................... 7

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025 ............................................. 6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (Jan. 21, 2026) ..................................................................................................................... 3

iv

Kyle Cheney, *Trump administration concedes DOGE team may have misused Social Security data*, Politico, Jan. 20, 2026 .................................................................... 6

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, Democracy Docket, June 12, 2025 ..................................................... 6

Press Release, U.S. Department of Justice, *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026) ............................... 4

Press Release, U.S. Department of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025) .......................................................................................................................... 4

Press Release, U.S. Department of Justice, *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025) ........................................................ 4

Press Release, U.S. Department of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025) ............................ 5

Press Release, U.S. Department of Justice, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025) ........................... 4

Press Release, U.S. Department of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025) ................................... 5

Press Release, U.S. Department of Justice, *Justice Department Sues Virginia for Failure to Produce Voter Rolls* (Jan. 16, 2026) ..................................................................... 4

Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, Reuters, Sept. 9, 2025 ................................................ 5

**Rules**

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................... 15

Fed. R. Civ. P. 24(b)(3) ........................................................................................ 16

Fed. R. Civ. P. 24(c) .............................................................................................. 1

Common Cause and Claire Ewing (together, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) or, in the alternative, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, and set forth the legal argument necessary to support their motion below. Proposed Intervenors append to this motion a proposed answer by way of a response to the United States' Complaint, *see* Ex. 1, while reserving the right to supplement their response to the Complaint should intervention be granted, in accordance with the Court's previously-ordered briefing schedule, *see* Minute Order, Dkt. No. 30 (Jan. 14, 2026). *See* Fed. R. Civ. P. 24(c).[1]

## INTRODUCTION

The United States seeks to force Connecticut to turn over voters' sensitive personal information and data. It has been widely reported that the United States intends to use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement.

Proposed Intervenors are Common Cause, a non-partisan organization dedicated to grassroots voter engagement in Connecticut whose members and whose own work are at risk by the relief the federal government seeks in this case, and Claire Ewing, a Connecticut voter who is at particular risk from voter purges as a naturalized citizen. Proposed Intervenors have a strong interest in preventing the disclosure of Connecticut's most sensitive non-public voter data. Common Cause has an interest in protecting the voting and privacy rights of its members and all Connecticut voters. The relief the federal government seeks risks discouraging Connecticut residents from registering to vote, undermining their work. And the privacy and voting-rights interests of Common Cause's members and of Ms. Ewing are also directly at stake. Proposed

---

[1] Proposed Intervenors conferred with Plaintiff, Defendant, and the existing Intervenor-Defendants regarding this motion, and no party opposes intervention. Proposed Intervenors are available to present oral argument on their motion to the extent that the Court would find it helpful in its decision.

1

Intervenors include members of some of those groups who are under particular threat from the United States' requested relief, including voters who are naturalized citizens and voters who have a prior felony conviction.

Proposed Intervenors are entitled to intervene as of right under Rule 24 as this motion is timely, their rights and interests are at stake, and those rights and interests are not adequately represented by Defendant, who unlike Proposed Intervenors is a state actor, subject to broader considerations external to the legal issues presented in this case, or the existing Intervenor-Defendants. Proposed Intervenors' unique interests, perspective, and motivation to interrogate the purpose of the sweeping request for non-public voter data will ensure full development of the record and aid the Court in its resolution of this case. Indeed, just as this Court has already permitted intervention by individual voters and membership-based organizations, *see* Minute Order, Dkt. No. 23 (Jan. 13, 2026), courts hearing similar cases brought over other states' refusal to turn over sensitive voter information have granted intervention to civic organizations—including Common Cause—and individual voters.[2]

Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

## BACKGROUND

### I.     DOJ's Efforts to Obtain Private Voter Information

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"),

---

[2] *See, e.g.*, Order, *United States v. Wis. Elections Comm.*, No. 3:25-cv-1036-JDP, Dkt. No. 53 (W.D. Wis. Jan. 22, 2026); Text Order, *United States v. Hanzas*, No. 2:25-cv-903-MKL, Dkt. No. 42 (D. Vt. Jan. 20, 2026); Text Order, *United States v. Schmidt*, No. 2:25-cv-1481-CB, Dkt. No. 105 (W.D. Pa. Jan. 16, 2026); Text Order, *United States v. Amore*, No. 1:25-cv-639-MSM-PAS (D.R.I. Jan. 6, 2026); Text Order, *United States v. Galvin*, No. 1:25-cv-13816-LTS, Dkt. No. 30 (D. Mass. Jan. 6, 2026); Order, *United States v. Simon*, No. 0:25-cv-3761-KMM-EMB, Dkt. No. 90 (D. Minn. Jan. 6, 2026); Order, *United States v. Nago*, No. 1:25-cv-522-LEK-RT, Dkt. No. 20 (D. Haw. Jan. 5, 2026); Order, *United States v. Scanlan*, No. 1:25-cv-371-AJ, Dkt. No. 23 (D.N.H. Jan. 5, 2026); Order, *United States v. Oliver*, No. 1:25-cv-1193-LF-JFR, Dkt. No. 25 (D.N.M. Dec. 19, 2025); Minute Order, *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, Dkt. No. 70 (C.D. Cal. Nov. 19, 2025).

began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Jan. 21, 2026), https://perma.cc/2MG5-SKJK.

On August 6, 2025, DOJ sent a letter to Connecticut Secretary of State Stephanie Thomas ("the Secretary"), which propounded several questions regarding Connecticut's voter registration and list maintenance procedures and requested that Connecticut provide information about purported "registered voters identified as ineligible to vote" due to being non-citizens or due to a felony conviction, and asked for a response within 14 days. Pl.'s Mot. for Order to Compel, Ex. 1, Ltr. from Michael E. Gates to the Hon. Stephanie Thomas dated August 6, 2025, Dkt. No. 9-2 ("August 6 Letter"); Compl. ¶ 20. The August 6 Letter referenced the NVRA but did not mention either HAVA or the CRA. *See* August 6 Letter. On August 20, 2025, the Secretary responded to the questions in the August 6 Letter and noted that her office was gathering the rest of the requested data. Pl.'s Mot. For Order to Compel, Ex. 2, Ltr. from the Hon. Stephanie Thomas to Michael Gates and Maureen Riordan dated August 20, 2025, Dkt. No. 9-3 ("August 20 Letter"); Compl. ¶ 23.

On December 12, 2025, DOJ sent a letter demanding an electronic copy of Connecticut's entire statewide voter registration list within 14 days. Pl.'s Mot. for Order to Compel, Ex. 3, Ltr. from Brittany E. Bennett to the Hon. Stephanie Thomas dated December 12, 2025, Dkt. No. 9-4 ("December 12 Letter"); Compl. ¶¶ 24-25.[3] DOJ stated that the production "should contain *all*

---

[3] Though the Complaint alleges that DOJ had already previously requested a copy of Connecticut's statewide voter registration list in its August 6 Letter, Compl. ¶ 21, the August 6 Letter includes no such request. *See* August 6 Letter.

*fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." *Id.* This time, DOJ also cited the CRA as authority for its request and noted that the "purpose of this request is to ascertain Connecticut's compliance with the list maintenance requirements of the NVRA and HAVA," but did not elaborate further in this regard or refer to any compliance deficiencies by Connecticut with respect to those statutes' voter list maintenance requirements. December 12 Letter at 2.

On December 24, the Secretary's office responded and refused to provide an unredacted voter registration list without legal authority. Pl.'s Mot. for Order to Compel, Ex. 4, Ltr. from Gabe Rosenberg to Brittany E. Bennett dated December 24, 2025, Dkt. No. 9-5 ("December 24 Letter"); Compl. ¶ 27. The Secretary's office explained that "the Secretary cannot provide [DOJ] with Connecticut's" voter registration list "because [DOJ's] letter offers no authority that requires or permits her to do so, no facts to suggest that Connecticut fails to comply with the list maintenance requirements of the [NVRA] or HAVA, and no reason to believe [its] request complies with all applicable state or federal privacy laws." December 24 Letter. The Secretary's office noted that if DOJ "intend[s] to rely on other authorities or allegations not raised in [its] letter, the Secretary welcomes the opportunity to review them." *Id.*

The United States responded by filing this lawsuit, which is one of at least twenty-five similar suits seeking disclosure of sensitive voter data.[4] The next day, the United States also filed

---

[4] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Virginia for Failure to Produce Voter Rolls* (Jan. 16, 2026), https://perma.cc/3L8Q-SJM5; Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice*

a motion to compel the production of records—namely, "an electronic copy of the Connecticut statewide Voter Registration List, to include *all fields*, including, each registrant's name, date of birth, address, and as required by HAVA, the last four digits of the registrant's social security number, driver's license/state identification number or the unique HAVA identifier." Pl.'s Mot. for Order to Compel, Dkt. No. 9 at 3.

But DOJ's request does not appear to relate to voter roll list maintenance under the NVRA or HAVA, the statutes invoked in the December 12 Letter. According to public reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating these novel efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from DOJ and DHS. *Id.*; *see also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09. One article extensively quoted a recently-departed lawyer from DOJ's Civil Rights Division describing DOJ's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security

*Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

data.      I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAGAZINE, Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

According to additional public reporting, these efforts are being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside the government who have previously sought to disenfranchise voters and overturn elections. *See* Kyle Cheney, *Trump administration concedes DOGE team may have misused Social Security data*, POLITICO, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245 ("Two members of Elon Musk's DOGE team working at the Social Security Administration were secretly in touch with an advocacy group seeking to 'overturn election results in certain states,' and one signed an agreement that may have involved using Social Security data to match state voter rolls      " (citing DOJ disclosures in *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH, Dkt. No. 197 (D. Md. Jan. 16, 2026))).[5] These actors and their associates have previously sought to compel states to engage in aggressive purges of registered voters, and have abused voter data to make mass challenges to disenfranchise voters in

---

[5] *See also* Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters; (reporting that Cleta Mitchell, a private attorney and leader of a national group called the "Election Integrity Network," has, among other things, promoted the use of artificial intelligence to challenge registered voters); Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to the federal Help America Vote Act, was meritless).[6]

Here, DOJ's actions also indicate that it may target specific groups of voters in its use of the requested data. *See also, e.g.*, Jonathan Shorman, *Trump's DOJ offers states 'confidential' deal to wipe voters flagged by feds as ineligible*, STATELINE, Dec. 18, 2025, https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/. In its August 6 Letter to the Secretary, and in letters to other states requesting the same private voter data, DOJ requested information about how election officials, among other things, identify and remove duplicate registrations; and verify that registered voters are not ineligible to vote, such as due to a felony conviction or lack of citizenship.[7] *See* August 6 Letter at 1-2. Many of these same voters are uniquely vulnerable to being wrongly removed from the voter rolls based on imperfect data matching systems, including naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization) and voters

---

[6] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections"); *see also* Jeremy Roebuck and Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html (noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024, https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump (same).

[7] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Exhibit No. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 2:25-cv-1481-CB (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 1:25-cv-1148-HYJ-PJG (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 6:25-cv-1666-MTK (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

with felony convictions (who may have been previously ineligible to vote before having their rights restored).

Notably, the United States' own representations tend to confirm suspicions of federal overreach that could disenfranchise voters. Far from indicating a purpose of ensuring compliance with the NVRA and HAVA, the United States has proposed a Memorandum of Understanding for a number of States to sign that seeks to place authority to identify supposed ineligible voters in the hands of the federal government, and requires removal of purportedly ineligible voters within 45 days in a manner contrary to those statutes' text. *Compare* Mot. to Intervene, Ex. 2, U.S. Dep't of Just., C.R. Div., Confidential Mem. Of Understanding ("MOU"), at 2, 5, *with* 52 U.S.C. § 21085 (methods of complying with HAVA "left to the discretion of the State"), *and* 52 U.S.C. § 20507 (protecting voters from removal under certain circumstances). And in connection with the recent deployment of Immigration and Customs Enforcement in Minneapolis, the United States Attorney General sent a letter demanding Minnesota officials turn over the state's complete voter files as one of the conditions of withdrawing federal law enforcement. *See* Ltr. from Att'y Gen. Pamela Bondi to Gov. Tim Walz dated Jan. 24, 2026 ("Bondi Minn. Letter"), *available at* https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html.

## II.    Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Connecticut voters register to vote and exercise their right to vote at each election. *See* Ex. 3, Decl. of Heather Ferguson ("Ferguson Decl.") ¶¶ 3-4, 7. Common Cause has approximately 11,500 members in Connecticut. *Id.* ¶ 5. Those members include Connecticut voters, whose personal data will be provided to DOJ if the United States prevails in this lawsuit. *Id.* ¶ 7. Common Cause expends significant resources conducting voter engagement and assistance efforts, including registering qualified people to vote, helping voters navigate the vote-by-mail

process, encouraging participation, and assisting voters who face problems trying to vote. *See id.* ¶¶ 10-13. The success of these efforts, especially with respect to voter registration, depend on voters' trust that, when they provide personal information to the State as part of the registration process, that information will not be abused, their privacy will be respected, and their right to participate will be honored. *See id.* ¶¶ 13-15.

Proposed Intervenor Claire Ewing is a Connecticut voter who is a naturalized citizen. *See* Ex. 4, Decl. of Claire Ewing ("Ewing Decl.") ¶¶ 8-9. She cares about the privacy of her voter data and worries that, as a naturalized citizen, she is at particular risk of false allegations about illegal voting. *Id.* ¶¶ 11-12.

## ARGUMENT

## I.     Movants Are Entitled to Intervene as a Matter of Right.

In the Second Circuit, a party seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must: "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (citation omitted). Because Prospective Intervenors satisfy each of these requirements, intervention should be granted.

### A.  The Motion to Intervene Is Timely.

"The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." *A.H. by E.H. v. N.Y. State Dep't of Health*, 147 F.4th 270, 281 (2d Cir. 2025) (citation omitted). Relevant factors include: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances." *Id.* (citation omitted).

This motion is timely. The suit was filed on January 6, 2026, and, upon learning of it, Proposed Intervenors promptly prepared this motion. Defendants have not yet filed their response to the Complaint, meaning that the case is at its earliest stages and the existing partes would not be prejudiced. *See Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 86 (D. Conn. 2014) (holding that a motion to intervene filed "just over three months" after a lawsuit began and prior to any answer or motion to dismiss was timely). In contrast, Proposed Intervenors will be substantially prejudiced absent intervention, given the serious threats that the relief sought poses to Proposed Intervenors' fundamental rights.

**B. Proposed Intervenors Have Concrete Interests in the Litigation.**

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). To intervene under Rule 24(a), "the interest alleged must be direct, substantial, and legally protectable." *Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, 134 F.4th 73, 79 n.3 (2d Cir. 2025) (internal citations and quotation marks omitted). However, a proposed intervenor need not "identify a narrow interest amounting to a legal entitlement." *In re N.Y.C. Policing*, 27 F.4th at 801. Here, Proposed Intervenors offer multiple, independently-sufficient interests.

*First*, Proposed Intervenors have a right to privacy in the sensitive data sought, *i.e.*, the entire unredacted voter file, "with all fields, including . . . state driver's license number, the last four digits of their Social Security number, or HAVA unique identifier." Compl. ¶ 31(B) (emphasis omitted). The Supreme Court has made clear that "disclosure of private information" is an injury "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)—and so Proposed Intervenors have a "direct, substantial, and legally protectable" interest in avoiding its disclosure. *Hamilton Rsrv. Bank Ltd.*, 134 F.4th at 79 n.3. Connecticut provides express protections from disclosure for social security numbers,

driver's license numbers, and potentially full birth dates of voters, as well as for the contact information of voters who have attested that nondisclosure of their information is necessary for their safety or their family's safety. *See* Conn. Gen. Stat. § 9-50d; *see also id.* §§ 9-19h(b)(1), 9-20(b), 9-23h, 9-26, 9-32. The data sought is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly assembling. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation of any database "describing how any individual exercises rights guaranteed by the First Amendment," which includes exercising the right to vote). These privacy interests are significant and inure to each of the individual voter Proposed Intervenors and to Common Cause's members who are Connecticut voters. *See* Ferguson Decl. ¶¶ 7, 11, 13; Ewing Decl. ¶¶ 11-12.

*Second*, based on the United States' requests to Connecticut and other States, the data sought is likely to be used to challenge the registration of certain Connecticut voters, including voters with prior felony convictions and voters who are naturalized citizens (whose current citizenship status might not be reflected in databases that have out-of-date information), or to chill voting by fear of a baseless challenge. *See supra* 7-8 & n.7. Proposed Intervenors fall within at least some of those categories. *See* Ewing Decl. ¶ 8. And Common Cause's members, especially those most likely to be targeted using the data sought, have a concrete interest in not being disenfranchised by so-called "election integrity measures." *See* Ferguson Decl. ¶ 14.

*Third*, Common Cause as an organization has protectable interests at stake as their core missions will be harmed if the relief that the federal government seeks is granted. Their voter registration activities will be harmed as voters will be chilled from registering if they believe their sensitive personal data will be provided to the federal government and potentially misused as part of a national database. *See id.* ¶¶ 13-14. The threat of voter eligibility challenges (such as

challengers misinterpreting or misusing voter roll information) will force Common Cause to redirect resources to mitigating the attempted disenfranchisement of existing voters, away from core activities of registering voters and engaging new voters in the democratic process. *See id.*

Courts routinely find that non-partisan organizations, like Common Cause, should be granted intervention in election-related cases, due to their significantly protectable interests related to voting. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111–12 (D.C. Cir. 2015); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013). This case is no exception. Indeed, in similar cases brought over other states' refusal to turn over sensitive voter information, such organizations were granted intervention. *See supra* n.2 (collecting cases). And as the only court to rule on the DOJ's motion to compel records has held, "[t]he centralization of [voter] information by the federal government would have a chilling effect on voter registration which would inevitably lead to decreasing voter turnout as voters fear that their information is being used for some inappropriate or unlawful purpose." *Weber*, No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807, at *20 (C.D. Cal. Jan. 15, 2026).

### C. Disposition of this Case May Impair the Proposed Intervenors' Interests.

Proposed Intervenors' interests would be impaired if Plaintiff succeeds in obtaining its requested relief. The third element asks "whether, as a practical matter, the proposed intervenors' legitimate interest will be impaired as a result of the underlying litigation." *N. River Ins. Co. v. O&G Indus., Inc.*, 315 F.R.D. 1, 5 (D. Conn. 2016) (internal citations and quotation marks omitted); *see also In re N.Y.C. Policing*, 27 F.4th at 802-03 (holding that an intervenor established its asserted interests would be harmed because "the nature and scope of any . . . relief would likely be influenced by the circumstances shown in discovery and the resolution of issues that may predate the remedy phase"). Here, there is a significant risk of harm to Proposed Intervenors' interests.

The United States proposes to summarily dispose of voters' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of their request, 52 U.S.C. § 20703. *See* Pl.'s Mot. for Order to Compel. This attempt to secure the irrevocable disclosure of private voter data at the very beginning of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests. Indeed, if DOJ is successful in obtaining Proposed Intervenors' private voter data, that "would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024).

### D. Defendants' Interests Differ from Those of Proposed Intervenors.

Finally, the existing parties will not adequately represent Proposed Intervenors' interests. "Intervention under Rule 24(a)(2) is warranted when there is 'sufficient doubt about the adequacy of representation.'" *In re N.Y.C. Policing*, 27 F.4th at 803 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972)). "A prospective intervenor's burden in demonstrating that their interest is not adequately protected is minimal " *In re Enf't of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*, 153 F.4th 142, 168 (2d Cir. 2025) (internal citation and quotation marks omitted).

Proposed Intervenors meet this minimal burden here. As a government officer, Secretary of State Thomas has a generalized interest in carrying out Connecticut's legal obligations and in minimizing burdens on governmental employees and resources. Secretary Thomas also must consider broader public policy concerns, in particular the need to maintain working relationships with federal officials. In contrast, Proposed Intervenors bring a distinct, particular interest to this litigation, making the existing representation inadequate: the perspective of a non-partisan civil rights and civil engagement group whose sole commitment is to ensuring access to the ballot and

individual voters whose own rights are at risk. *Compare Judicial Watch,* 2024 WL 3454706, at \*5 ("The State Board has an interest in fulfilling its election obligations as required by the NVRA and Illinois law. Proposed Intervenors seek protection for their discrete set of members' voting rights and have an interest in preventing resource reallocation in doing so." (citations omitted)), *with, e.g.*, Ferguson Decl. ¶¶ 6, 14 (describing Common Cause's commitment to "empower[ing] people to make their voices heard in the political process" and its interest in preventing resource reallocation from its capacity to "educate voters[] and mobilize communities" toward responding to DOJ's activities if it obtains the requested data).

Indeed, there may be arguments and issues that Defendant may not raise that are critical to organizations like Common Cause. For example, individual voters have a more direct injury than states under the Privacy Act for misuse of their personal data, especially given that the Privacy Act grants individuals an express right to bring suit. *See* 5 U.S.C. § 552a(g)(1)(D) ("Whenever an agency fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency"). As another example, courts have found a risk that considerations external to the issues presented by a case like this can motivate officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors or of their members. *See Judicial Watch*, 2024 WL 3454706, at \*5 (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the

Board's administrative concerns").

These diverging perspectives—between the government's general need to balance various considerations and the Proposed Intervenors' personal and particular interest in the privacy of their own data—present a classic scenario supporting intervention, because institutional defendants like the state officials here "may . . . behave like a stakeholder rather than an advocate." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 133 (2d Cir. 2001) (noting that even though a defendant may vigorously defend against suit, "it may have an equally strong or stronger interest in bringing such litigation to an end by settlement[]"); *see also, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups"). These concerns are particularly present here, where the United States has attempted to strongarm states into compliance by conditioning the withdrawal of federal immigration agents on turning over voter files. *See* Bondi Minn. Letter at 3.

Proposed Intervenors also bring a different set of experiences and interests than the existing set of intervenor-defendants. These include the unique perspective of a naturalized citizen who recently moved to the state, making her disproportionately likely to get swept up in a voter purge. *See* Ewing Decl. ¶¶ 8-9. These perspectives are essential to this litigation and vindicating the rights of Proposed Intervenors.

## II.     In The Alternative, The Court Should Grant Permissive Intervention.

Should the Court decline to grant intervention as of right, the Court should use its broad discretion to grant permissive intervention. "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In adjudicating a motion for permissive intervention, "the 'principal consideration' for a court is 'whether the intervention will unduly delay or prejudice the

adjudication of the original parties' rights.'" *Allco Fin. Ltd.*, 300 F.R.D. at 88 (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) and Fed. R. Civ. P. 24(b)(3)).

As discussed above, this motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and their interests are not adequately represented by any of the existing parties. And Proposed Intervenors' defense goes directly to the matters at issue, such as (1) whether federal law permits Plaintiff to force Connecticut to give it the personal information sought; (2) whether federal and state legal privacy protections prohibit disclosure of that information; and (3) whether the United States' motivations for the data sought are permissible. Proposed Intervenors' distinct perspective on the issues will complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it.

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Republican Nat'l Comm. v. Aguilar*, 2024 WL 3409860, at *1–3 (D. Nev. July 12, 2024) (permitting intervention by voter advocacy group as defendant in litigation seeking purge of voter rolls). The Court should do the same here.

## CONCLUSION

For all these reasons, the Motion should be granted.

Dated: January 27, 2026

Respectfully submitted,

William Hughes*
Theresa J. Lee*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
whughes@aclu.org
slakin@aclu.org

Patricia Yan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20001
(202) 457-0800
pyan@aclu.org

*/s/ Joseph Gaylin*
Joseph Gaylin (#ct32089)
Elana Bildner (#ct30379)
Dan Barrett (#ct29816)
Jaclyn Blickley (#ct31822)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF CONNECTICUT
P.O. Box 230178
Hartford, CT 06123
(860) 471-8471
jgaylin@acluct.org
ebildner@acluct.org
dbarrett@acluct.org
jblickley@acluct.org

*Counsel for Proposed Intervenors Common Cause
and Claire Ewing*

* Application for admission *pro hac vice*
forthcoming