# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 25-13816-LTS |
| WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts, | ) | |
| Defendant. | ) | |

ORDER ON MOTION TO COMPEL (DOC. NO. 6) AND
MOTIONS TO DISMISS (DOC. NOS. 49, 52, 56)

April 9, 2026

SOROKIN, J.

This case is one of more than two dozen brought by the United States against state election officials seeking production of statewide voter registration lists.  In this case, the United States Attorney General demanded that Massachusetts Secretary of the Commonwealth William Galvin provide an unredacted voter list, and when Secretary Galvin declined, the United States filed suit.  The United States' complaint fails for the simple reason that the Attorney General's demand did not comply with Title III of the Civil Rights Act of 1960, the statute on which it purports to rely.  For this reason and as elaborated below, this case is DISMISSED.

I.   BACKGROUND

   A.   Legal Context[1]

The Civil Rights Act of 1960 ("CRA") is one in a series of statutes Congress enacted to provide the federal government tools to make real the promise of the Fourteenth and Fifteenth Amendments—to end the scourge of racial discrimination in elections.  See, e.g., United States v. Oregon, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *3 (D. Or. Feb. 5, 2026) (citing United States v. Mayton, 335 F.2d 153, 159 (5th Cir. 1964)).  Title III of the CRA is one such tool.  See, e.g., Alabama ex rel. Gallion v. Rogers, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."), aff'd sub nom. Dinkens v. Att'y Gen. of U.S., 285 F.2d 430 (5th Cir. 1961).

Title III requires every "officer of election" to "retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into [the officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election."  52 U.S.C. § 20701.  These records must be "made available for inspection, reproduction, and copying" by the United States Attorney General (or the Attorney General's representative) if the Attorney General makes a "demand in writing" for such a production.  52 U.S.C. § 20703.  The written demand "shall contain a statement of the basis and the purpose therefor."  Id.  The federal district court for the district in which the demand is made or records are located "shall have jurisdiction by appropriate process to compel the production of such record or paper."  52 U.S.C. § 20705.

---

[1] The posture of this case and the Court's disposition require only an abbreviated discussion of the legal landscape governing federal elections.

Massachusetts, like every state, maintains an electronic statewide voter registration list ("SVRL" or "VRL"), as required by the Help America Vote Act of 2002 ("HAVA"). 52 U.S.C. § 21083; see also Doc. No. 57 at 8–9.[2] HAVA and the National Voter Registration Act of 1993 ("NVRA") require Massachusetts, and every state, to undertake an ongoing program of voter-list maintenance, though federal law largely leaves the finer details of list maintenance to the states' discretion. 52 U.S.C. §§ 20507, 21083, 21085; see also Doc. No. 1 ¶¶ 11–15.

B.    Facts[3]

On July 22, 2025, officials in the United States Department of Justice's Civil Rights Division sent Secretary Galvin a letter seeking "information regarding the Commonwealth's procedures for complying with" provisions of the NVRA. Doc. No. 7-1 at 2. The July 22 letter requested, in pertinent part, that Secretary Galvin "produce for inspection . . . [t]he current electronic copy of Massachusetts'[s] computerized [SVRL] as required by" HAVA.[4] Id. (citing

---

[2] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or, for documents enumerated by paragraph, to paragraph numbers.

[3] Although the parties disagree about the posture of this case, including whether the Federal Rules of Civil Procedure apply, contrast Doc. No. 7 at 10–11, and Doc. No. 72 at 11–16, with Doc. No. 57 at 22–23, and Doc. No. 75 at 2, all appear to agree that the Court may properly consider the parties' letters, which are referenced in the United States' complaint and submitted as exhibits to its motion to compel, Doc. Nos. 7-1 to -4. Cf. Newman v. Krintzman, 723 F.3d 308, 309 (1st Cir. 2013) (court may consider "(a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice," including "matters of public record," and "(c) concessions in a plaintiff's response to the motion to dismiss" (citation modified)).

[4] The letter also requested: a list of election officials responsible for implementing Massachusetts's list maintenance program; the steps taken by those officials to comply with the NVRA; the steps taken to identify and remove any registered voters identified as noncitizens, adjudicated incompetent, or convicted of a felony (along with the number of persons so identified); and additional explanation of Massachusetts's answers to three questions on the Election Assistance Commission's Election Administration and Voting Survey. Doc. No. 7-1 at 2–3. The record before the Court contains no information about the status of these additional requests. The complaint contains no request for relief as to any of these requests, and neither the motion to compel nor any other papers filed by the United States press any of these requests.

52 U.S.C. §§ 21083(a), 20507(i)).  The letter made no reference to the CRA.  It also did not cite any concerns with or complaints about Massachusetts's compliance with the NVRA, HAVA, or other federal requirements.  On August 7, 2025, the Massachusetts Deputy Secretary sought additional time to respond to the Justice Department's requests.  Doc. No. 7-2.

On August 14, 2025, the Assistant Attorney General for Civil Rights sent a second letter to Secretary Galvin.  Doc. No. 7-3.  The August 14 letter stated that the Attorney General "ha[d] requested Massachusetts's VRL to assess your compliance with the list maintenance provisions of the NVRA."  Id. at 2 (citing 52 U.S.C. § 20501).  After describing the Justice Department's authority to enforce and/or request records under the NVRA, HAVA, and CRA, the letter stated: "Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Massachusetts's complete and current VRL.  The purpose of this request is to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA."  Id. at 3.  The letter requested that Secretary Galvin "provide the requested electronic VRL with all fields to the Justice Department no later than August 21, 2025."  Id.  Secretary Galvin did not respond to this letter or to the Justice Department's August 28 follow-up email, and the Secretary's office subsequently advised Justice Department officials that Massachusetts would not provide its SVRL.  Doc. No. 1 ¶¶ 25–27.

On December 11, 2025, the United States filed suit.  Doc. No. 1.  The complaint asserted a single claim: that Secretary Galvin's refusal to provide the SVRL demanded in the August 14 letter violated Section 303 of the CRA.  Id. ¶¶ 28–30 (citing 52 U.S.C. § 20703).  It sought a declaratory judgment to that effect and an order directing the Secretary "to provide . . . an electronic copy of Massachusetts's statewide Voter Registration List with all fields . . . within five (5) days of a Court order."  Id. at 7–8.  Alongside the complaint, the United States filed a

motion to compel production of "the Massachusetts statewide Voter Registration List with all fields."  Doc. No. 6 at 2 (citing 52 U.S.C. §§ 20701, 20703, 20705).

The Court permitted four membership organizations and an individual Massachusetts voter to intervene as defendants.[5]  Doc. No. 30.  Secretary Galvin and the intervenor-defendants moved to dismiss the complaint and opposed the motion to compel.  Doc. Nos. 49, 52, 53, 55, 56.  The United States filed a consolidated opposition to the motions to dismiss, Doc. No. 72, to which the defendants replied, Doc. Nos. 73, 75, 76.  The United States did not file, nor did it seek to file, a reply in support of its motion to compel.  The United States did not request to be heard,[6] and, after careful consideration, the Court decides the motions on the papers.[7]

II.    DISCUSSION

Secretary Galvin argues the United States has failed to show its entitlement to Massachusetts's SVRL under Title III of the CRA because (1) it failed to state "the basis" for its demand, (2) it did not identify a "plausible purpose" for its demand, (3) the demanded records are untethered from the only federal election to occur in the twenty-two months preceding the demand, and (4) the United States cannot compel the production of sensitive personal information through a Title III demand.  Doc. No. 57 at 13–22.  The intervenor-defendants advance substantially similar arguments.  Doc. No. 50 at 17–27; Doc. No. 54 at 9–21.  Because

---

[5] The intervenor-defendants are the New England State Area Conference of the NAACP, the Massachusetts Alliance for Retired Americans, Common Cause, Jane Doe Inc., and Juan Pablo Jaramillo.  Doc. No. 30.  The motions to intervene were unopposed.  Id.; Doc. Nos. 9, 13.
[6] Intervenor-defendants Common Cause, Jane Doe Inc., and Juan Pablo Jaramillo requested oral argument on their joint motion to dismiss.  Doc. No. 49.  No other party made such a request.  The Court has carefully considered the papers and concludes that oral argument is not necessary to decide the issues presented, and it therefore denies the intervenor-defendants' request.
[7] The Court acknowledges the amicus briefs filed by the Democratic National Committee, Former Employees of the U.S. Department of Justice, and the Bipartisan American Election Project.  Doc. Nos. 64, 68, 90.

the Court concludes that the Attorney General's letter failed to "contain a statement of the basis" for the demand as required by law, the Court need not reach the parties' other arguments.

The Court's analysis starts and ends with the text of Title III.  "Statutory interpretation begins with the language of the statute."  Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 8 (1st Cir. 2007); accord, e.g., Ross v. Blake, 578 U.S. 632, 638 (2016).  "Where, as here, that language is clear and unambiguous, the inquiry is at an end."  Ruiz, 496 F.3d at 8.

The relevant section of Title III provides: "This demand"—i.e., the "demand in writing by the Attorney General or his representative"—"shall contain a statement of the basis and the purpose therefor."  52 U.S.C. § 20703 (emphasis added).  "[T]he basis . . . therefor" is the "foundation" or "chief supporting factor" "for" the demand.  See Basis, Webster's New World Dictionary of American Language 122 (college ed. 1959); Therefor, Webster's New World Dictionary of American Language 1512 (college ed. 1959); see also, e.g., Basis, Black's Law Dictionary (4th ed. 1951) ("Fundamental principle; groundwork; support; foundation; the foundation or groundwork of anything; that upon which anything may rest or the principal component parts of a thing"); Therefor, Black's Law Dictionary (4th ed. 1951) ("For that thing; for it, or them").  Put simply, the statute requires a statement of why the Attorney General demands production of the requested records—and, as conveyed by the statute's use of the definite article, the statement must be "the" factual basis, not just a conceivable or possible basis.

Several aspects of this requirement are apparent from the face of the text.  First, the requirement that the Attorney General state "the basis" for her request is mandatory, not a mere formality with which the federal government or this Court is free to dispense.  Congress granted the Attorney General authority to demand certain election-related records and imposed a three-part requirement on her exercise of that authority: (1) her demand must be "in writing" and her

6

written demand "shall contain a statement of [(2)] the basis and [(3)] the purpose therefor." 52 U.S.C. § 20703. Congress's use of mandatory language—"shall contain"—clearly conveys that a statement reciting both the basis and the purpose is a prerequisite to a Title III demand. Cf. Ross, 578 U.S. at 639 ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." (omission in original) (quoting Miller v. French, 530 U.S. 327, 337 (2000))). And the requirement serves a purpose—the Attorney General must have a basis, and must articulate that basis, in order to demand a state or local election official produce election records. See United States v. Weber, No. 2:25-cv-09149-DOC, 2026 WL 118807, at *9 (C.D. Cal. Jan. 15, 2026) (noting that basis-and-purpose requirements preclude Justice Department from "embark[ing] on a fishing expedition of voter records in any state . . . without identifying a single issue with the state's policies beforehand").

Second, the text makes clear that "the basis" of the demand must be made express—the "demand in writing" must "contain a statement of the basis and the purpose." 52 U.S.C. § 20703; see also Contain, Webster's New World Dictionary of American Language 318 (college ed. 1959) ("to have in it; hold; enclose or include"). The statute therefore directs the Court to the Attorney General's written demand—rather than the United States' subsequent court filings—to determine whether that demand "contain[ed] a statement of the basis" for the demand. See also Oregon, 2026 WL 318402, at *9 (rejecting United States' "patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis'").

Third, the statutory text clearly conveys that "the basis" and "the purpose" are conceptually distinct. The text repeats the definite article "the" before "basis" and "purpose," and it uses the conjunctive "and" to join them. Construing "the basis and the purpose" as satisfied by a statement of either the basis or the purpose would render part of the statutory text

7

superfluous.  Principles of statutory interpretation caution against such a construction.  See, e.g.,

Consumer Data Indus. Ass'n v. Frey, 26 F.4th 1, 7 (1st Cir. 2022) ("A statute . . . ought to be

construed in a way that 'no clause, sentence, or word shall be superfluous, void, or

insignificant.'" (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001))).

The Court's interpretation comports with the construction given Title III by the Justice

Department and federal courts in the early months and years following the statute's enactment.

The Attorney General's written demands to several local election officials provided:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.
>
> The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

Kennedy v. Lynd, 306 F.2d 222, 229 n.6 (5th Cir. 1962); Kennedy v. Bruce, 298 F.2d 860, 861

(5th Cir. 1962); In re Coleman, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), aff'd sub nom.

Coleman v. Kennedy, 313 F.2d 867 (5th Cir. 1963).  These written demands, "in compliance

with the requirements of the statute," Bruce, 298 F.2d at 861, stated expressly the basis for the

demand—information tending to show racial discrimination in voting—as well as the purpose—

to determine whether violations of federal election law had occurred.

In the present case, the Court need not determine what standard the "statement of the

basis" must satisfy nor what level of scrutiny a court should apply to the stated basis.[8]  Here, the

Attorney General offered no basis—none—and the demand was therefore facially inadequate.

---

[8] The parties contest these issues, but even under the United States' proposed standard, it concedes that the Court may inquire whether "the Attorney General ma[d]e a written demand for election records stating the basis and purpose."  Doc. No. 72 at 7.

The Attorney General's Title III demand for Massachusetts's SVRL appears in the Justice Department's August 14 letter.[9]  Doc. No. 7-3 at 3.  The August 14 letter contains nothing that could fairly be characterized as the factual basis for the demand.  The letter states only that the Attorney General had authority to demand the voter registration list or bring enforcement actions and concludes, "Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Massachusetts's complete and current VRL."  Doc. No. 7-3 at 3.

Even if the Court considers both the July 22 and August 14 letters together as constituting the Attorney General's "demand" for Title III purposes, see United States v. Benson, No. 1:25-cv-1148-HYJ, 2026 WL 362789, at *8 n.3 (W.D. Mich. Feb. 10, 2026); but see Oregon, 2026 WL 318402, at *9, the correspondence specifies no "basis" for the demand.  The July 22 letter identifies no requirements of federal law with which Massachusetts had, or was suspected to have, failed to comply.  See generally Doc. No. 7-1.  Unlike the Justice Department's demand letters directed at some other jurisdictions, neither the July 22 letter nor the August 14 letter "pointed to [any] purported anomalies within [Massachusetts's] voter registration data."  Benson, 2026 WL 362789, at *8.  Indeed, while the August 14 letter states the demand's "purpose," Doc. No. 7-3 at 3, nowhere does either letter use the word "basis" or any equivalent phrase (e.g., "based upon").  Contrast Doc. No. 7-1, and Doc. No. 7-3, with Lynd, 306 F.2d at 229 n.6.  In short, the Attorney General's written demand for Massachusetts's records did not "contain a statement of the basis . . . therefor."  52 U.S.C. § 20703.

---

[9] The Court assumes without deciding, for purposes of its analysis, that an electronic SVRL is a record subject to the retention and demand provisions of Title III.  52 U.S.C. §§ 20701, 20703.  But see United States v. Benson, No. 1:25-cv-1148-HYJ, 2026 WL 362789, at *9–11 (W.D. Mich. Feb. 10, 2026).

In its briefing, the United States claims two potential bases for its demand, both of which are foreclosed by the statutory text. First, it says that the August 14 letter "explain[ed] the basis of the demand as Massachusetts'[s] possible lack of compliance with the voter registration list requirements enumerated in the [Justice] Department's July 22 Letter." Doc. No. 7 at 8. But as explained above, the letters contradict this claim; nowhere do they "contain a statement" that Massachusetts was "possibl[y]" out of compliance with any requirement.

Perhaps the federal government means that, by stating that its purpose was "to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA," Doc. No. 7-3 at 3, it implied that its "basis" was Massachusetts's "possible lack of compliance" with those requirements. But this sort of reasoning runs headlong into the CRA's text. The federal government's logic would collapse "the basis" into "the purpose," rendering a statutory phrase superfluous. And suggesting that the CRA is satisfied so long as a demand's recipient can infer the basis is contrary to the statute's requirement of a written demand "contain[ing] a statement of the basis."

Second, the United States argues that "the basis for the demand was Title III of the CRA." Doc. No. 72 at 9; see also id. at 19. In other words, the United States contends that the "statement of the basis" requirement imposed by Title III is satisfied if the written demand includes "a reference to the statutory basis for making the demand, namely the CRA." Id. at 23. This argument confuses the legal authority under which the Attorney General made the demand—the CRA—and the statute's requirement to state "the basis"—the foundation in fact or evidence for the demand.

The United States cites no authority for the proposition that Title III's "statement of the basis" prerequisite requires only a citation to the statute itself. That gap is unsurprising. Other

10

courts have consistently interpreted this statutory text to require a statement of the factual basis giving rise to the demand for records. See Oregon, 2026 WL 318402, at *9; Weber, 2026 WL 118807, at *9; see also Benson, 2026 WL 362789, at *8 (concluding that demand letter's pointing to specific purported "anomalies" in registration data and to Justice Department's receipt of complaint regarding state's compliance with federal requirements satisfied Title III's "statement of the basis" requirement). It was the Attorney General's practice, in the wake of Title III's enactment, to include a statement of the factual (not merely legal) basis, a practice the courts noted favorably. Lynd, 306 F.2d at 229 n.6 (remarking that demand letter's statement that demand was "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction" complied with Title III); Bruce, 298 F.2d at 861 (same); In re Coleman, 208 F. Supp. at 199–200 (same). If Congress sought to direct the Attorney General to include a citation to Title III in demand letters, requiring the letter to contain a "statement of the basis and the purpose therefor" would not be the obvious way to do so. See, e.g., 5 U.S.C. § 553(b)(2) (requiring notice of proposed rulemaking to include "reference to the legal authority under which the rule is proposed"); 8 U.S.C. § 1229(a)(1)(B) (requiring notice to appear for removal proceedings to "specify[] . . . [t]he legal authority under which the proceedings are conducted").

The only support the United States marshals for its proposed interpretation are its twin contentions that Title III was enacted as an investigatory tool to identify violations of federal election law, and that the Attorney General cannot be required to prove a violation before seeking evidence of the same. Doc. No. 72 at 11–14, 21–22. These arguments miss the point. Congress did not require the Attorney General to prove a violation before compelling the

11

production of records; it <u>did</u> require the Attorney General to make a demand "contain[ing] a statement of the basis" for the demand.  Title III is not an outlier in this regard.  To invoke all (or virtually all) investigatory tools and compulsory process, the law requires some showing— typically less than the showing required to prevail on the related claim.  <u>See, e.g.</u>, Fed. R. Civ. P. 26(b)(1) (imposing precondition that civil discovery be "relevant" and "proportional" but not requiring proof by a preponderance of the evidence to obtain discovery); Fed. R. Crim. P. 41(d)(1) (imposing precondition that search warrant be supported by probable cause but not requiring proof beyond a reasonable doubt to authorize search).  Here, Congress required a "statement of the basis and the purpose" for the demand for voting records.  52 U.S.C. § 20703. The Court has no occasion to determine the precise contours of this requirement because the Attorney General advanced no basis whatsoever for her demand for Massachusetts's records.

In summary, Title III requires, at least, a written demand containing a statement of "the basis and the purpose" for the demand.  52 U.S.C. § 20703.  The demand made of Secretary Galvin for Massachusetts's SVRL contained no such statement.  For this reason, the Attorney General has not complied with Title III, and that failure to comply is fatal to the United States' complaint and motion to compel.[10]

III.    <u>CONCLUSION</u>

The Attorney General's demand for the Massachusetts statewide voter registration list was facially deficient.  It failed to satisfy a simple requirement imposed by Congress as one precondition to obtaining documents under the authority of the Civil Rights Act of 1960.

---

[10] Secretary Galvin and intervenor-defendants argued in their papers that the demand letter failed to state the basis for the demand, Doc. No. 57 at 17–18; Doc. No. 50 at 18–20; Doc. No. 54 at 12–13, and the United States responded to those arguments, Doc. No. 72 at 9, 19, 23.  The United States has not sought leave to revise its demand letter, to amend its pleadings, or to otherwise address the clear shortcoming in the process it followed here.

Accordingly, the motion to compel (Doc. No. 6) is DENIED and the complaint (Doc. No. 1) is

DISMISSED.  The motions to dismiss (Doc. Nos. 49, 52, 56) are TERMINATED AS MOOT.

SO ORDERED.


       /s/ Leo T. Sorokin           
       United States District Judge