**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 3:26-CV-00021-KAD |
| STEPHANIE THOMAS, in her official capacity as Secretary of the State of Connecticut, | May 18, 2026 |
| *Defendant*, | |
| SEIU DISTRICT 1199NE, CONNECTICUT ALLIANCE FOR RETIRED AMERICANS, CONNECTICUT CITIZEN ACTION GROUP, and BETTE MARAFINO, | |
| *Intervenor-Defendants*, | |
| and | |
| COMMON CAUSE, and CLAIRE EWING, | |
| *Intervenor-Defendants*. | |

**INTERVENOR-DEFENDANTS SEIU DISTRICT 1199NE, CONNECTICUT ALLIANCE FOR RETIRED AMERICANS, CONNECTICUT CITIZEN ACTION GROUP, AND BETTE MARAFINO'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Intervenor-Defendants SEIU District 1199NE, Connecticut Alliance for Retired Americans, Connecticut Citizen Action Group, and Bette Marafino ("Intervenor-Defendants") respectfully submit this response to Plaintiff's Notice of Supplemental Authority regarding an

1

Office of Legal Counsel ("OLC") opinion. *See* ECF No. 96; *see also* ECF No. 97 (Common Cause Intervenors' Response to Plaintiff's Notice of Supplemental Authority).

The OLC opinion adds nothing to DOJ's arguments in this case, and it contradicts some of them. It represents nothing more than DOJ's unsurprising view that DOJ is correct in this litigation. Agency opinion letters are afforded no legal deference, and the OLC opinion is no different. *See Christensen v. Harris County*, 529 U.S. 576, 587–88 (2000); *New Jersey v. Bessent*, 149 F.4th 127, 145 (2d Cir. 2025) ("In the post-*Chevron* era . . . interpretation of the statute is a question of law, and accordingly, it is the court, and not the administrative agency, that determines its meaning." (quotation omitted)). Moreover, the preparation of an OLC opinion on a subject of ongoing litigation was contrary to OLC's own guidelines. *See* Office of Legal Counsel, *Memorandum for Attorneys of the Office Re: Best Practices for OLC Legal Advice and Written Opinions* at 3 (July 16, 2010), https://perma.cc/2DWR-ALS7 ("As a prudential matter, OLC generally avoids opining on questions likely to arise in pending or imminent litigation involving the United States as party.").[1]

In any event, the substance of the OLC opinion supports many of Defendants' and Intervenor-Defendants' arguments that this case must be dismissed. It confirms that DOJ had no factual basis for its demands of Connecticut or any other state, as Title III requires, arguing only that DOJ's "basis" was its purpose of investigating NVRA and HAVA compliance. *See* ECF No. 96-1 at 21–24. But that is not what the word "basis" means. OLC's bizarre argument that "the basis and the purpose" is a "legal doublet" like "aid and abet" is unsupported by any citation showing such usage anywhere else, nor any explanation for why Congress in 1960 would have

---

[1] This Best Practices Memo remains in effect, notwithstanding OLC's choice to involve itself in pending litigation here. *See* https://www.justice.gov/olc/best-practices-olc-legal-advice-and-written-opinions [https://perma.cc/8NQD-JN7J] (last visited May 18, 2026).

coined a new doublet out of a supposed desire to "include[] both the French and Old English words" so that any Old English speakers in 1960s America could understand legal proceedings supposedly "conducted in Norman French." ECF No. 96-1 at 23 & n.23.[2]

The OLC opinion also confirms that DOJ's demand did not accurately state "the purpose" of DOJ's request, and it reveals facts that are in substantial tension with statements made by DOJ at the hearing on the order to show cause. For example, counsel for DOJ stated that "[c]ounsel had suggested in his opening that, you know, the real motive behind this is that the Department intends to transmit everything to Homeland Security for immigration enforcement purposes. And that's not correct. We stated what the written basis and purpose was in the letter, which is to simply examine and determine whether or not the State of Connecticut is in compliance with HAVA and the NVRA." Mar. 19, 2026 Hrg. Tr. at 42:22–43:4, ECF No. 86. But OLC makes clear, on the very first page of its opinion, that DOJ's demands were made "[i]n response to the President's order to identify those who may be voting illegally," and that "the Civil Rights Division . . . proposed to seek statewide voter lists, and then to share the lists with Homeland Security Investigations ('HSI') or another unit within DHS." ECF No. 96-1, at 1.

The OLC opinion later confirms that if DOJ finds individuals it believes are non-citizens on the voter list, it "may seek to strike the alien's name from the voter registration list for future elections, refer the alien for prosecution, or both." ECF No. 96-1 at 5. These purposes of investigating individual voters are distinct from evaluating *Connecticut*'s compliance with its own

---

[2] "[T]he basis and the purpose" does not fit the legal doublet framework in any event: unlike actual legal doublets like "aid and abet," "basis" and "purpose" are not synonyms and neither term is of Germanic or Old English etymology—they come from Latin and French, respectively—so they could not possibly serve OLC's asserted purpose of such doublets. *See Basis*, Oxford English Dictionary (Dec. 2025); *Purpose (n.)*, Oxford English Dictionary (Mar. 2026). The use of a definite article before both terms in "the basis and the purpose" provides additional evidence that Congress meant the two words to have distinct meanings, further distinguishing them from any recognized legal couplet. *See United States v. Galvin*, --- F. Supp. 3d ---, No. 1:25-cv-13816, 2026 WL 972129, at *4 (D. Mass. Apr. 9, 2026).

discrete list maintenance obligations—the only purpose reflected in DOJ's demand letter to Connecticut. ECF No. 9-4. Nor would investigating individual voters be proper, as nothing in the NVRA, HAVA, or the CRA grants DOJ supervisory power over the removal of noncitizens from state voter rolls. And given the serious concerns about the reliability of the databases that are likely to be used to attempt to identify purported non-citizens, the risk that citizens will be targeted is significant.

Finally, OLC's analysis confirms that the voter files are outside the scope of Title III in any event, because they are created by state election officials rather than "com[ing] into their possession" from third parties. OLC contends that "[i]f Congress had meant to limit section 303 to materials that a third party has provided state election officers, it had other, more specific words available," such as "receive." ECF No. 96-1 at 9. Yet, OLC then defines receive as "[*t*]*o come into possession of*, get, acquire, or the like, from any source outside of oneself," and to "indicate[] a transfer of possession from one person . . . to another[.]" *Id.* (emphasis added) (quotations omitted). Those definitions buttress the argument that the CRA does not extend to voter lists. *See* Def.'s. Resp. to Mot. to Compel at 16–17, ECF No. 59.

Dated: May 18, 2026

Respectfully submitted,

/s/ William Bloss
William Bloss
CT Fed. Bar No. CT01008
**KOSKOFF KOSKOFF & BIEDER P.C.**
350 Fairfield Avenue, Suite 501
Bridgeport, CT 06604
T: (475) 766-4317
bbloss@koskoff.com

David R. Fox*
Joshua C. Abbuhl*
Tori Shaw*

4

**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
dfox@elias.law
jabbuhl@elias.law
tshaw@elias.law

* Admitted *Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ William Bloss*