# EXHIBIT A

2026 WL 1780586

2026 WL 1780586
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

UNITED STATES OF AMERICA Plaintiff,

v.

JARED DEMARINIS Defendant.

Civil Case No.: SAG-25-3934

|

06/18/2026

Stephanie A. Gallagher, United States District Judge

MEMORANDUM OPINION

**\*1** The United States brings this action, one of thirty similar lawsuits that it has brought throughout the country, seeking Maryland's statewide voter registration list ("SVRL"). ECF 1. The United States has sued Jared DeMarinis in his official capacity as State Administrator of Elections for the State of Maryland, and several additional individuals and organizations have intervened as defendants (collectively, "Defendants"). The United States has filed a Motion to Compel Production of Documents, ECF 2, and various groupings of Defendants have filed motions to dismiss the United States's complaint, ECF 34 (DeMarinis), 43 (Common Cause; Out for Justice, Inc.; Myriam Paul; Luis Sims; Carl Snowden), 50 (Maryland/DC Alliance for Retired Americans).1 This Court has reviewed the filings and finds that no hearing is necessary. See Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, the United States's motion to compel will be denied, and Defendants' motions to dismiss will be granted.

1 Also pending is the United States's Motion for Leave to File Combined Response to Supplemental Authorities, ECF 73, which will be granted as unopposed.

I. BACKGROUND
On July 14, 2025, the Deputy Assistant Attorney General for the Civil Rights Division sent DeMarinis, in his capacity as the chief election official for Maryland, a letter concerning Maryland's compliance with federal election laws. ECF 2-2 at 2–5. The letter requested several types of information, including, as pertinent here, a copy of

Maryland's computerized SVRL. Id. at 2. Specifically, the letter requested, "The current electronic copy of Maryland's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list." Id. On July 30, DeMarinis responded to the letter, directing the United States to obtain publicly available portions of the SVRL online. Id. at 9. DeMarinis sent a follow-up letter on August 13 that inquired into the purpose of the SVRL request. Id. at 13–14.

The Assistant Attorney General for the Civil Rights Division then sent DeMarinis another letter on August 18. Id. at 16–18. That letter (1) reiterated the United States's demand for a copy of the computerized SVRL; (2) specified that the request was made pursuant to the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and Title III of the Civil Rights Act of 1960 ("CRA"); and (3) stated that the purpose of the request was to ascertain Maryland's compliance with the list maintenance requirements of the NVRA and HAVA. Id. The letter specified that the United States sought a copy of the SVRL that "contains all fields, which includes the registrant's full name, date of birth, residential address, and his or her state driver's license number or the last four digits of the registrant's social security number." Id. at 16. One week later, DeMarinis responded that none of the provisions cited in the previous letter granted the United States access to Maryland's SVRL. Id. at 20–22.

**\*2** Several months later, the United States commenced this action, bringing a single claim for violation of the CRA. ECF 1. Immediately thereafter, it filed the motion to compel production of the SVRL. ECF 2. As noted above, the United States has filed similar lawsuits in other courts seeking the SVRLs of other states. See Justice Department Sues Five Additional States for Failure to Produce Voter Rolls, U.S. Dep't of Justice Office of Public Affairs (Feb. 26, 2026), https://www.justice.gov/opa/pr/justice-department-sues-five-additional-states-failure-produce-voter-rolls (last visited June 18, 2026). Thus far, courts have dismissed eight of these lawsuits on motions similar to the ones pending before this Court. See United States v. Wis. Elections Comm'n, —— F. Supp. 3d ——, 2026 WL 1430354 (W.D. Wis. May 21, 2026); United States v. Bellows, – —— F. Supp. 3d ——, 2026 WL 1430481 (D. Me. May 21, 2026); United States v. Fontes, —— F. Supp. 3d ——, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); United States v. Amore, —— F. Supp. 3d ——, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); United States v. Galvin, —— F. Supp. 3d —— –, 2026 WL 972129 (D.

Mass. Apr. 9, 2026); United States v. Benson, 819 F. Supp. 3d 753 (W.D. Mich. 2026); United States v. Oregon, —— F. Supp. 3d ——, 2026 WL 318402 (D. Or. Feb. 5, 2026); United States v. Weber, 816 F. Supp. 3d 1168 (C.D. Cal. 2026). No court has ruled in favor of the United States to date.

## II. LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. See, e.g., In re Birmingham, 846 F.3d 88, 92 (4th Cir. 2017); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. Twombly, 550 U.S. at 555.

## III. DISCUSSION

### A. Statutory Background

Title III of the CRA contains several provisions governing this dispute. First, 52 U.S.C. § 20701 provides, in pertinent part:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election....

52 U.S.C. § 20703, in turn, provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

*3 Finally, 52 U.S.C. § 20705 provides, "The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper."

Although the United States did not bring claims under the NVRA and HAVA, those provisions are also relevant to this dispute. As pertinent here, the NVRA requires each state to maintain its SVRL by making a reasonable effort to remove the names of voters who are no longer eligible to vote in that jurisdiction. 52 U.S.C. § 20507(a)(4). The HAVA, in turn, requires states to maintain and administer an interactive computerized SVRL and prescribes how to maintain such a list in accordance with the NVRA. 52 U.S.C. § 21083.

### B. Applicability of the Federal Rules of Civil Procedure

This Court must first determine the proper procedures to employ in adjudicating the pending motions. The United States argues that the Federal Rules of Civil Procedure do not apply in a proceeding to compel documents requested under Title III. Accordingly, it contends that it is entitled to an order compelling the production of the requested documents before discovery or summary judgment and that Defendants may not file motions to dismiss.

Rule 81 of the Federal Rules of Civil Procedure provides that those rules apply to "proceedings to compel...the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." Fed. R. Civ. P. 81(a)(5). Nothing in the CRA or this Court' Local Rules provides that the Federal Rules of Civil Procedure do not apply to these proceedings, and this Court has entered no such order.

2026 WL 1780586

The United States, however, contends that Kennedy v. Lynd, 306 F.2d 222 (5th Cir. 1962), supports its position. In that case, the Fifth Circuit concluded that in adjudicating a motion to compel pursuant to the CRA, the court must conduct "a special statutory proceeding" divorced from the Federal Rules of Civil Procedure. Id. at 225–26. Only two years later, however, the Supreme Court decided United States v. Powell, 379 U.S. 48 (1964). That case involved two different statutes concerning administrative summonses that each include, as pertinent here, identical language to § 20705. Powell, 379 U.S. at 52. Namely, the statutes at issue provided that a district court "shall have jurisdiction by appropriate process to compel [testimony or production of evidence]." Id. at 52 n.10 (quoting 26 U.S.C. § 7402(b) and 26 U.S.C. § 7604(a)). The Supreme Court determined that because the statutes contained no provision specifying a procedure, the Federal Rules of Civil Procedure applied to adjudications under the statutes. Id. at 58 n.18.

The CRA similarly contains no provision specifying a procedure to invoke the district court's jurisdiction. Rather, it contains the same language at issue in Powell conferring jurisdiction "by appropriate process." Consistent with Powell, and every other court to have addressed this question in the recent litigation in other states, this Court concludes that the Federal Rules of Civil Procedure apply. See Fontes, 2026 WL 1177244, at *1; Amore, 2026 WL 1040637, at *4; Benson, 819 F. Supp. 3d at 766; Oregon, 2026 WL 318402, at *8; Weber, 816 F. Supp. 3d at 1182. Accordingly, this Court will now turn to the merits of the pending motions.

C. CRA Claim

*4 Defendants make several arguments supporting dismissal of the United States's claim, but this Court need address only one: whether the SVRL constitutes a record or paper that the United States may request, and that DeMarinis must produce, pursuant to § 20703.2 As described above, that provision requires the production of only those records and papers whose retention is required by § 20701, which, in turn, covers "all records and papers which come into [an election officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" for federal office within the preceding twenty-two months.

The SVRL is not such a record or paper. First, the SVRL, which is created by state officials, does not "come into [their] possession." As another court recently analyzing this question reasoned:

The phrase "come into [their] possession" naturally refers to a process by which someone acquires an item from an external source. See, e.g., Honeycutt v. United States, 581 U.S. 443, 449, 137 S.Ct. 1626, 198 L.Ed.2d 73 (2017) (defining "obtain" as "to come into possession of" (quoting Random House Dictionary of the English Language 995 (1966))); Receive, Black's Law Dictionary (11th ed. 2019) (defining "receive" as "to come into possession of or get from some outside source"); 16 U.S.C. § 620e (defining "acquire" as "to come into possession of"). As Intervenors observe, Congress frequently uses the phrase "come into possession" to refer to items that a person obtains rather than creates. See, e.g., 18 U.S.C. § 1703(a) (prohibiting postal employees from destroying letters that "come into [their] possession"); 50 U.S.C. § 217 (requiring soldiers to report when abandoned property "comes into [their] possession"); 13 U.S.C. § 214 (prohibiting census takers from disclosing information that "comes into [their] possession"); 18 U.S.C. § 654 (prohibiting embezzlement of property that "comes into [one's] possession"); 46 U.S.C. § 10705 (describing process to follow "[w]hen money, property, or wages of a deceased seaman comes into possession of a consular officer"); 44 U.S.C. § 3572 (imposing limits on federal employees' use of confidential information that they "come[ ] into possession of"). Indeed, at least one federal statute draws an explicit distinction between possessing something and having something come into one's possession. See 8 U.S.C. § 1454 ("If the certificate or declaration has been lost, the applicant or any other person who shall have, or may come into possession of it is required to surrender it...." (emphasis added)). Here, Congress could have referred simply to "records in the possession

2 Even were this Court to follow

Lynd and conclude that the Federal Rules of Civil Procedure do not apply to this proceeding, Lynd itself acknowledged that the court may determine whether a particular record falls within the scope of the CRA. See Lynd, 306 F.2d at 226; see also Wis. Elections Comm'n, 2026 WL 1430354, at *2 (noting that even under the summary proceeding used in Lynd, the court must decide as a matter of law whether the records at issue fall under the statute).

of" election officials, or even just "records" without any qualifier, which is the language used in the NVRA, see 52 U.S.C. § 20507(i)(1). In order to give effect to the phrase "come into [their] possession" and prevent it from being surplusage, the Court interprets the phrase as referring to

only those documents that state election officials receive from prospective voters.

This interpretation of "come into [their] possession" is bolstered by the next words in the sentence: "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." Each of these terms refers to something that the voter submits or does as part of the registration process. Here, the meaning of "come into possession" is clarified by the rest of the sentence, which indicates the sorts of records covered by the statute: namely, records that election officials receive, rather than create. This fact supports the conclusion that the provision requires officials to preserve voters' submissions to the State so that the federal government can determine whether the State is improperly rejecting voter registration applications. Such an interpretation makes sense given that when the CRA was passed, the federal government's attempts to protect the voting rights of Black citizens had been frustrated by state officials' destruction of voter registration applications. See Report of the United States Commission on Civil Rights 93 (1959), https://perma.cc/2PDF-GZHB ("Rejected applications were destroyed approximately 30 days after being rejected, which fact made accurate statistical review of the records impossible."). The CRA responded to that problem by requiring states to preserve records that voters submit to them—not records that states create.

*5  Benson, 819 F. Supp. 3d at 768–69 (footnote omitted).

Second, interpreting § 20701 to cover an SVRL would bring it into conflict with an adjacent provision, 52 U.S.C. § 20702, which criminalizes the alteration of any record or paper covered by § 20701. An SVRL, unlike a voter registration application that an applicant submits once, is a dynamic list that is constantly updated and, thus, altered. Indeed, the NVRA and HAVA require an SVRL's constant alteration. The United States's proposed interpretation of the CRA would therefore criminalize the same conduct that the NVRA and HAVA require. This Court will not read § 20701 to produce such an absurd result. See Fontes, 2026 WL 1177244, at *4 (noting this potential conflict and instead reading § 20701 in harmony with the rest of the statutory scheme).

This Court is not persuaded otherwise by the authorities on which the United States relies. First, the United States cites several cases that do not concern the reach of § 20701. Rather, Alabama ex rel. Gallion v. Rogers, 187 F. Supp. 848 (M.D. Ala. 1960), concerned the constitutionality of the CRA, and Judicial Watch v. Lamone, 399 F. Supp. 3d 425 (D. Md. 2019), and Project Vote/Voting for America, Inc. v. Long, 682 F.3d 331 (4th Cir. 2012), concerned the authority to request voter registration materials pursuant to the NVRA. Specifically, the latter two decisions interpreted the records disclosure provision of the NVRA, which, unlike § 20701, does not include the qualifying language "come into his possession." See 52 U.S.C. § 20507 (requiring maintenance and disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters"). Those decisions therefore have no bearing on whether the CRA's provisions authorize requests for SVRLs. Finally, the United States cites a recent opinion published by the Department of Justice Office of Legal Counsel, which determined that the CRA authorizes the United States to compel production of SVRLs. See Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. ___ (May 12, 2026). This Court will not interpret the CRA contrary to its text simply because an office of the party advancing that interpretation has adopted it.

Accordingly, this Court joins every court to have addressed this issue in concluding that an SVRL is not a record or paper that a state must produce to the United States under the CRA. See Wis. Elections Comm'n, 2026 WL 1430354, at *5; Bellows, 2026 WL 1430481, at *7; Fontes, 2026 WL 1177244, at *5; Benson, 819 F. Supp. 3d at 770. Thus, the motion to compel will be denied, and the motions to dismiss will be granted. Given this Court's ruling that the CRA does not require production of the SVRL, "no amendment in the complaint could cure the defects in the plaintiff's case." Domino Sugar Corp. Sugar Workers Loc. Union 392, 10 F.3d 1064, 1067 (4th Cir. 1993) (quoting Coniston Corp. v. Vill. of Hoffman Ests., 844 F.2d 461, 463 (7th Cir. 1988)). The dismissal of the CRA claim will therefore be with prejudice.

IV. CONCLUSION

*6  For the reasons stated above, the United States's motion for leave to file combined response, ECF 73, will be granted, its motion to compel, ECF 2, will be denied, and Defendants' motions to dismiss, ECF 34, 43, 50, will be granted. The United States's complaint, ECF 1, will be dismissed with prejudice, and this case will be closed. A separate Order follows.

Dated: June 18, 2026 /s/

UNITED STATES OF AMERICA Plaintiff, v. JARED DEMARINIS Defendant., Slip Copy (2026)

2026 WL 1780586

Stephanie A. Gallagher

United States District Judge

**All Citations**

Slip Copy, 2026 WL 1780586

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.